**STATE OF OREGON, By and Through its DEPARTMENT OF TRANSPORTATION, and Grace Crunican, Director, Oregon Department of Transportation, Plaintiffs,**

v.

**HEAVY VEHICLE ELECTRONIC LICENSE PLATE, INC., an Arizona corporation, Defendant.**

**Civ. No. 01–6066–TC.**

United States District Court, D. Oregon.

Aug. 9, 2001.

David E. Leith, Department, Julie Smith, Department of Justice, Paul A. Graham, Department of Justice, General Counsel, Salem, OR, for plaintiffs.

David Wade, Doyle Gartland Nelson McCleery & Wade, PC., Eugene, OR, Rodney F. Page, Bryan Cave, LLP, Washington, DC, for defendant.

## ORDER

COFFIN, United States Magistrate Judge.

Plaintiffs have filed a complaint under 28 U.S.C. § 1331, 42 U.S.C. § 1983, and Article I, Section 8 of the United States Constitution, seeking a declaratory judgment and injunctive relief against defendant. Presently before the court is defendant's Motion to Dismiss (# 8).

### FACTUAL BACKGROUND[1]

This is a case about trucking. Increased regulation of foreign heavy trucks and similar long-haul carriers has been in the news of late, in response to public concern for the safety of motorists on United States highways.[2] In this case, however, plaintiffs and defendant have been seeking ways to decrease regulatory red tape for truckers and increase the efficiency of commercial transportation.

Heavy Vehicle Electronic License Plate, Inc. ("HELP"), is a non-profit corporation

---

1. The facts presented here are, where disputed, those asserted by the plaintiffs in their complaint. For purposes of a Motion to Dismiss, all material allegations in the complaint are treated as true.

2. See, e.g., Philip Shenon, *Senate Backs Strict Safety Tests for Mexican Trucks in U.S.*, N.Y. TIMES, July 27, 2001.

that operates a multi-state electronic "highway screening system" known as "PrePass." Essentially, the PrePass system works as follows: A trucker enters into an agreement with HELP to take part in the PrePass system. HELP provides a transponder to the trucker, which continuously emits a low-level radio signal identifying the truck. Information about the truck, such as its height, weight, licenses and permits, is stored in various computers throughout the states in which PrePass operates. As the truck approaches a weigh station, border crossing, or other traditional regulatory stop location, PrePass receivers detect the signal sent by the truck's transponder, and information about the truck is accessed. If everything is in order, the PrePass receiver returns a signal to the truck which is displayed to the driver, and the driver continues on without stopping. The trucker is charged 99 cents each time he successfully passes a PrePass station. The convenience and efficiency offered by this sort of system is obvious, and at present over 150 sites and more than 170,000 trucks utilize the PrePass system.[3]

The State of Oregon, through the Oregon Department of Transportation, operates a similar system called the Green Light Program ("Green Light").[4] Green Light and PrePass are similar enough that each system can interact with transponders issued by the other; i.e., carriers enrolled in Green Light can transmit the appropriate signals to PrePass receivers, and vice versa. The two systems are thus "technically interoperable." However, the methods by which funds are received by each program are quite different: while PrePass charges carriers on a per-use basis, Green Light charges users an annual enrollment fee.[5]

At its core, the issue between the parties relates to the differences in revenue generation. PrePass, to protect its investment in transponders, receivers and related infrastructure, requires all PrePass carriers to utilize the HELP-issued transponder only at PrePass receiving stations, where they can collect the 99 cent fee. Oregon, on the other hand, freely allows carriers to use Green Light transponders in the PrePass program as well as in any other technically interoperable preclearance system if the carriers so desire.

Oregon has indicated that it intends to begin entering data on carriers using HELP-issued transponders into the Green Light system so that vehicles using those transponders will be able to preclear Oregon regulatory stations. Because these stations are Green Light stations, not HELP stations, HELP will collect no fee from the Oregon preclearances. HELP, in a letter to plaintiff Crunican as Director of the Oregon Department of Transportation, has insisted that Oregon may not utilize information emitted from HELP-issued transponders. Plaintiffs have now filed this action seeking to authorize their use of signals from HELP-issued transponders to preclear carriers traveling through Oregon. HELP has filed a motion to dismiss, asserting that the court lacks subject matter jurisdiction as well as personal jurisdiction over HELP, and that plaintiffs have failed to state a claim upon which relief can be granted.

---

3. Currently, 19 states are involved with the HELP PrePass program: Alabama, Arizona, Arkansas, California, Colorado, Florida, Illinois, Indiana, Iowa, Mississippi, Montana, Nebraska, Nevada, New Mexico, Ohio, Oklahoma, Tennessee, West Virginia, and Wyoming.

4. So called because when a trucker is electronically cleared, a green light illuminated on his transponder, whereas if he is not cleared and must stop, a red light illuminates.

5. Presently $35.00 per year.

### STANDARD OF REVIEW

Pursuant to Fed.R.Civ.P. 12(b), a complaint may be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Tanner v. Heise,* 879 F.2d 572, 576 (9th Cir.1989) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In making this determination, this court accepts all allegations of material fact as true and construes the allegations in the light most favorable to the nonmoving party. *Id.*

## I. *The District Court has subject matter jurisdiction over this controversy.*

### 1. *Applicable law.*

▪ Federal district courts have jurisdiction over cases or controversies involving questions of federal law under 28 U.S.C. § 1331. District courts also enjoy supplemental jurisdiction to examine issues of state law that arise out of the same set of operative facts, pursuant to 28 U.S.C. § 1367. However, in "controversies between two or more States", the United States Supreme Court has "original and exclusive jurisdiction." 28 U.S.C. § 1251(a).

### 2. *Analysis in this case.*

HELP asserts that the member states of its organization are the real parties in interest in the action, and as such the action is between "two or more States" and must be brought in the Supreme Court. HELP bases its argument largely on the rationale of *Arkansas v. Texas,* 346 U.S. 368, 74 S.Ct. 109, 98 L.Ed. 80 (1953), which offers that when an action is brought by a state against a non-state entity, but the state will suffer the injury of a judgment, jurisdiction is appropriately in the Supreme Court. HELP supports its argument with *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d

576 (1981), which justified the Supreme Court's original jurisdiction where the interests of the states were affected in a "substantial and real" way. *Id.* at 737, 101 S.Ct. 2114.

The Ninth Circuit has apparently not considered the issue of where the draw the line to determine what the "substantial and real" interests of states are that justify depriving a district court of jurisdiction in a case between states, even though the case was brought not against the state proper. However, the Second Circuit recently examined the issue in *Connecticut v. Cahill,* 217 F.3d 93 (2nd Cir.2000), a case of first impression for that Circuit as well, and their analysis is helpful here.

In *Cahill,* plaintiff Connecticut sought declaratory and injunctive relief from officers of New York state charged with enforcing a law that limited the taking of lobsters from a particular area off the coast of New York to New York residents, on the grounds that the law was unconstitutional. The District Court for the Northern District of New York ruled that the suit was a controversy between two states and dismissed the action for want of jurisdiction. On appeal, the Second Circuit examined the issue of "whether a suit brought by a State against officers of another State should be deemed to be against the other State itself, in which event it would lie within the Supreme Court's 'original and exclusive jurisdiction of all controversies between two or more States.'" *Id.* at 95 (quoting 28 U.S.C. § 1251(a)).

The Second Circuit examined three criteria to assist in the identification of suits properly within the Supreme Court's original jurisdiction: (1) the state's role as plaintiff; (2) a plaintiff-state's options concerning the identity of defendant-parties; and (3) considerations that require a limited category of suits to be considered as

being brought against a state directly. It concluded that (1) the Supreme Court has exercised original jurisdiction over suits for declaratory and injunctive relief brought by states as plaintiffs in *parens patriae;* (2) the Supreme Court has afforded plaintiff-states considerable freedom to name, or to decline to name, another state as defendant, such that the plaintiff-state may "enjoy (or suffer) the jurisdictional consequences of that decision"; but that (3) a state whose officers' actions are challenged must be considered the real party in interest where the alleged injury was caused by action specifically authorized by state law and the suit implicates the state's "core sovereign interests." *Cahill,* 217 F.3d at 98–99.

The critical aspect of the decision, limiting the complete exclusivity of Supreme Court jurisdiction to those suits implicating the state's "core sovereign interests", was decided after the court examined various dicta pronounced by the Supreme Court about when it believes it should assume jurisdiction. In *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), for example, Justice Brennan observed that:

> The Framers, in establishing original jurisdiction in this Court for suits "in which a State shall be a Party," and Congress, in implementing the grant of original jurisdiction with respect to suits between States, may well have conceived of a somewhat narrower category of cases as presenting issues appropriate for initial determination in this Court than the full range of cases to which a State may have an interest cognizable by a federal court. The institutional limits on the Court's ability to accommodate such suits accentuates the need for

more restrictive access to the original docket.

458 U.S. at 611, 102 S.Ct. 3260 (Brennan, J., concurring) (citations omitted). Further, the court noted then-Justice Rehnquist's dissent in *Maryland v. Louisiana, supra:*

> I would require that the State's claim involve some tangible relation to the State's sovereign interests. Our original jurisdiction should not be trivialized and open to run-of-the-mill claims simply because they are brought by a State, but rather should be limited to complaints by States *qua* States. This would include the prototypical original action, boundary disputes, and the familiar cases involving disputes over water rights. In such cases, the State seeks to vindicate its rights as a State, a political entity.

451 U.S. at 766, 101 S.Ct. 2114 (Rehnquist, J. (now C.J.), dissenting). The Second Circuit concluded based on this analysis that "in the absence of such core [sovereign] interests ... a State's injunction suit against State officers, which the Supreme Court would not regard as a suit against the State requiring the exercise of its jurisdiction, may properly proceed in a district court." *Cahill,* 217 F.3d at 100.

This analysis is similarly applicable to the case presently before the court. Plaintiffs sue in *parens patriae* on behalf of Oregon citizens.[6] Plaintiffs did not name the officers of a state in its action, it named instead a private corporation that has several states as members. Plaintiffs certainly could have filed an action against one or all of the states with an interest in HELP, but they chose not to, and will "enjoy (or suffer) the jurisdictional consequences of that decision." Thus, the appropriate inquiry is whether the case con-

---

**6.** Whether the suit is seen as for the benefit of all Oregon citizens, or only for those Oregon residents who utilize HELP-issued transpon-

ders, it is appropriately brought in *parens patriae.*

cerns the "core sovereign interests" of the states involved.

What constitutes "core sovereign interests" is subject to interpretation, but some issues are clearly included in that phrase, such as state contracts, debts, boundaries, interstate escheat, interstate limited fund taxation, and resource allocation. *See* Ann Woolhandler & Michael G. Collins, *State Standing*, 81 VA.L.REV. 387, 516–16 (1995). Here, the issue is nothing so central to a state's sovereignty; rather, the issue is whether a state can utilize the information contained in radio signals sent by transponders issued by a private corporation (to some extent on behalf of other states), when the individual users of such transponders have agreed not to let such utilization occur.[7] Whatever the answer to that question, the states' sovereignty is secure; the issue relates simply to financial efficiency.[8] This is not the sort of core sovereign interest that warrants the Supreme Court's original and exclusive jurisdiction. It is, rather, exactly the sort of quarrel over money and technology that the district courts hear frequently when brought by private litigants. This court does not lack subject matter jurisdiction, and defendant's Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) is denied.

## II. *The District Court has personal jurisdiction over HELP as to the relief sought.*

### 1. *Applicable law.*

In order to issue an enforceable judgment against a defendant, a court must have personal jurisdiction over that party. When the defendant, as here, is physically located outside the state in which the court sits, the inquiry into personal jurisdiction requires a two part analysis: whether the forum state's long-arm statute permits the court to assert jurisdiction, and whether such assertion would violate defendant's due process rights. *Fireman's Fund Ins. Co. v. National Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir.1996) Because Oregon's long-arm statute is co-extensive with the outer limits of due process, only the constitutional issue needs addressing.

Due process requires that an out-of-state defendant "have certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks omitted). Further cases have refined the "minimum contacts" requirement to allow a plaintiff to demonstrate contacts supporting the assertion of "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). When the court considers jurisdictional motions based on party affidavits, plaintiff bears the burden of demonstrating that an assertion of personal jurisdiction is presumptively proper through a prima facie showing of jurisdictional facts. *American Telephone & Telegraph Co. v. Compagnie*

7. Although it could be argued that such agreements create "state contracts" and thus a "core sovereign interest," the contracts were entered into by the corporation and not the individual states, and the states *qua* states have no rights or obligations under them.

8. After all, nothing prohibits Oregon from issuing Green Light transponders to carriers who also utilize HELP transponders, and

avoiding the problem. Thus, Oregon will have an adequate solution at its disposal regardless of the ultimate decision here. Similarly, HELP (and its member states) will lose no revenue because it does not gain any revenue from Oregon receivers as it is; at best, HELP has a potential revenue source in Oregon, but such cannot be said to be a "core sovereign interest" of the member states.

*Bruxelles Lambert,* 94 F.3d 586, 588 (9th Cir.1996).

## A. *General Jurisdiction*

A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *See Helicopteros,* 466 U.S. at 415, 104 S.Ct. 1868. This is "general jurisdiction." The standard for establishing general jurisdiction is "fairly high," *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986), and requires that the defendant's contacts be of the sort that approximate physical presence. *See Bancroft & Masters, Inc. v. Augusta National, Inc.,* 223 F.3d 1082, 1086 (9th Cir.2000) (citing *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984)). Factors to be considered in evaluating the defendant's contacts include whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *Bancroft,* 223 F.3d at 1086.

## B. *Specific Jurisdiction*

More limited jurisdiction can be asserted against an out-of-state defendant when a cause of action arises directly from the defendant's contact with that state. This is known as "specific jurisdiction." Specific jurisdiction exists if: (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposely availed himself of the privileges of conducting activities in the forum; (2) the claim arises out of or re-

sults from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Bancroft,* 223 F.3d at 1086 (citing *Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir.1997)). Each of these factors must be satisfied for an assertion of specific jurisdiction to be appropriate.

### i. *Purposeful Availment*

Purposeful availment is shown if "the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995). There must be a "substantial connection" with the forum state; the contacts must be something greater than random, fortuitous or attenuated events. *Burger King v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Physical presence is not required, so long as defendant's efforts are purposefully directed at forum residents. *Id.* at 476, 105 S.Ct. 2174. Thus, specific jurisdiction is proper where a defendant directs its tortious conduct toward a forum state, knowing the effects of the conduct will cause harm. *Calder v. Jones,* 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).[9] However, contacts resulting from the "unilateral activity of another party or third person" are not attributable to a defendant. *Burger King,* 471 U.S. at 475 & n. 17, 105 S.Ct. 2174.

### ii. *Causation*

The second requirement for specific jurisdiction is that the contacts constitution purposeful availment must be the same ones giving rise to the action upon which

---

**9.** Specifically, the *Calder* test requires that the defendant (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *Bancroft,* 223 F.3d at 1087. The Ninth Circuit in

*Bancroft* further noted that the "express aiming" requirement "is satisfied when the defendant is alleged to gave engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Id.*

jurisdiction is asserted. This requirement is measured in terms of a "but for" test. *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir.1995).

### iii. *Reasonableness*

The final requirement for specific jurisdiction is that the assertion of jurisdiction over the defendant must be reasonable under the circumstances. For the assertion to be reasonable, it must comport with fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S.Ct. 2174. If the first two requirements for asserting specific jurisdiction have been met, specific jurisdiction is presumptively reasonable, and the burden is on defendant to demonstrate a "compelling case" of unreasonableness. *Id.* at 476–77, 105 S.Ct. 2174. The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

### 2. *Analysis in this case.*

For the relief plaintiffs are seeking, this court clearly has personal jurisdiction over defendant. HELP has solicited business from Oregon carriers, issued transponders to such carriers, and issued transponders to carriers not based in Oregon but who routinely and foreseeably travel through the state, broadcasting their identification signals as they utilize Oregon highways and facilities. There can be no question that the court can grant declaratory and injunctive relief to plaintiffs allowing them to utilize such signals.[10] This is a District of Oregon court; the carriers with the transponders travel through Oregon and broadcast their signals into Oregon. It is difficult to conceive of how one could argue that this court is an inappropriate forum to examine the utilization of those transponders and their signals. However, HELP has attempted to so argue. For purposes of completeness, a formal analysis follows.

### A. *General jurisdiction.*

■ To support a finding of general jurisdiction, defendant's contact with the forum must be "substantial" or "continuous and systematic", and the court makes such inquiries as whether the defendant makes sales or solicits business in the forum, serves the forum's markets, designates an agent for service of process there or holds a license there. Here, defendant does make sales (via the fee contracts) to Oregon citizens,[11] solicits their business,[12] and issues transponders to carriers who foreseeably will enter the state. Some number of HELP-issued transponders are always in Oregon, and the signals from these tran-

---

**10.** One can also look at this from another perspective. Assume that Oregon has, without a prior declaratory judgment, begun to utilize such signals. If HELP wished to being suit against Oregon for the violations they claim as affirmative defenses here, suit would appropriately be brought in this court. The action for a declaratory judgment is a preemptive action dealing with the identical issues and parties that would be raised in an action filed by HELP in this court.

**11.** HELP has at contracts with at least 48 Oregon businesses and has provided them at least 744 transponders.

**12.** In September, 2000, HELP sent more than 1350 solicitations to Oregon-based carriers. HELP has also held two PrePass conventions in Oregon.

sponders are continuously broadcast in the state. HELP may assert that the presence of these transponders (and their signals) only gives rise to personal jurisdiction over the carriers in the state, not HELP itself, but such an assertion would overlook the obvious. The transponders are HELP-issued property; indeed, HELP's dominion and control over the use of the transponders and signals is the central issue in the dispute. For purposes of personal jurisdiction, the transponders each represent a little bit of HELP, and their ongoing presence in the state represents both "substantial" and "continuous and systematic" contacts with Oregon. Combined with the existing contracts with Oregon businesses and the solicitations for business sent to other Oregon-based enterprises, these contacts are more than sufficient to establish general jurisdiction over HELP.

### B. *Specific jurisdiction.*

██ Even if the court did not have general personal jurisdiction over HELP, specific jurisdiction for this action would exist. Specific jurisdiction exists when an action arises directly from defendant's contact with the forum and the contact was the result of defendant's purposeful availment of the privileges of conducting activities in the forum, so long as the assertion of jurisdiction is reasonable.

The relief sought by plaintiffs is a declaratory judgment that they can receive and utilize the transmissions, broadcast in Oregon, from HELP-issued transponders. As discussed above, when a transponder issued by HELP enters the state, or broadcasts its signals therein, HELP has contact with Oregon. Such contact constitutes purposeful availment, because each contact occurs as the result of a transaction with either a known Oregon-based carrier or a carrier based outside of Oregon but who will foreseeably enter Oregon with the transponder.

By definition, plaintiffs' action arises out of these forum-related activities. But for these transponders and transmissions in the state, plaintiffs would not be seeking relief. The only remaining question is whether assertion if specific jurisdiction is "reasonable under the circumstances." Because the purposeful availment and causation requirements have been met, specific jurisdiction is presumptively reasonable, and the burden is on HELP to demonstrate a "compelling case" of unreasonableness. *See Burger King, supra,* 471 U.S. at 476–77, 105 S.Ct. 2174. HELP has failed to meet this burden.

As discussed above, defendant's contacts with the forum are essentially continuous. There is no appreciable burden on its ability to defend the suit in Oregon; indeed, HELP representatives routinely correspond with or visit the state to solicit business. Any conflict with the sovereignty of defendant's home state of Arizona is outweighed by this forum's interest in adjudicating the dispute, and this forum is certainly the most convenient overall. In short, assertion of specific personal jurisdiction against HELP by this court is reasonable. HELP has not supplied any persuasive evidence to the contrary.

Because this court has personal jurisdiction over HELP, defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(2) is denied.

### III. *Plaintiffs have sufficiently stated a claim for a declaratory judgment on the issue of whether the actions they seek to take would violate federal or state statutes, regulations, or common laws (Claim 1).*

██ 28 U.S.C. § 2201(a) provides, in relevant part, that: "In a case or controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the

rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." Fed.R.Civ.P. 57 provides that: "The procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules". Both the substantive law and procedural rules that govern a traditional action apply to declaratory judgments, and as such the moving party's burden on a Motion to Dismiss is unaltered. Thus, while operating on the assumption that all material allegations in the complaint are true, defendant must show that there is no set of facts plaintiffs could prove which could support a judgment in their favor.

HELP's argument in support of its Motion to Dismiss plaintiff's first claim is predicated on the doctrine of "unclean hands." HELP asserts that Oregon's proposed use of the transponder information would violate the Wireless Telephone Protection Act [13] and would constitute various torts,[14] and as such plaintiffs cannot seek an equitable remedy because of their own unclean hands. However, this argument is clearly circular. What HELP asserts is the very issue that Oregon wishes to have the court examine. It would be premature to consider the merits of HELP's assertions in the context of a Motion to Dismiss.[15] Dismissal under Rule 12(b)(6) is appropriate only where it is plainly apparent that there is no set of facts that could support a judgment for the nonmoving party; here, whether plaintiffs' proposed action violates the statutory and common

laws as defendant believes cannot be deduced based solely on the pleadings under a 12(b)(6) standard.

One issue which does need addressing, however, is the issue of plaintiffs' potential liability under the Wireless Telephone Protection Act. Defendant notes that "[p]laintiff does not allege that it is subject to a threat of criminal prosecution" under the Wireless Telephone Protection Act, an Act with criminal rather than civil penalties. However, when considering an action for declaratory relief, courts should be "cognizant of the fact that several unpredictable factors may determine whether an actual controversy involving the plaintiff and the challenged law will come about." *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1154 (9th Cir.2000). The test is whether there is "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id.* (citations omitted). As HELP itself sent plaintiff Crunican a letter in which it indicated that plaintiffs would be in violation of the Act, its present assertion that plaintiffs are not subject to prosecution is not well taken. The possibility exists, based on the face of the complaint and HELP's own correspondence, that plaintiffs would need to defend against prosecution under the Act if it enrolls carriers with HELP-issued transponders into the Green Light program.

Because claim one of plaintiffs' complaint adequately states a claim for relief, defendant's Motion to Dismiss claim one pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

---

13. 18 U.S.C. § 1029.

14. HELP mentions misappropriation, conversion, and interference with an economic relationship.

15. The court notes that both parties have spent considerable effort battling on these

substantive questions. While the zest for research that the parties share is admirable, such efforts are more appropriately put forth in the context of a summary judgment motion.

**IV. Plaintiffs have sufficiently stated a claim for a declaratory judgment on the issue of whether enforcement of HELP's contract provisions prohibiting carriers from supplying plaintiffs with the ability to utilize HELP-issued transponder emissions would be an undue burden on interstate commerce (Claim 2).**

■ Again, defendant makes substantive arguments on this claim that are inappropriate in a 12(b)(6) motion. Of defendant's arguments, only the issue of standing is appropriate at this juncture.[16]

In examining plaintiffs' standing to sue, a court examines both constitutional and prudential requirements. "The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). These are that the plaintiffs must have suffered an injury in fact; that there be a causal connection between the injury and the conduct complained of; and that it be likely that the injury will be redressed by a favorable decision. *Id.* at 560–61, 112 S.Ct. 2130. Apart from these constitutional requirements, there is also a set of prudential principles that bear on standing. Particularly applicable to dormant Commerce Clause cases is the principle that plaintiff's complaint must "fall within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 475, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). This "zone of interests" test " 'denies a right of review if the plaintiff's interests are ... marginally related to or inconsistent with the purposes implicit in the [relevant constitutional provision].' " *Individuals for Responsible Government, Inc. v. Washoe County,* 110 F.3d 699, 703 (9th Cir.1997) (quoting *Wyoming v. Oklahoma,* 502 U.S. 437, 469, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) (Scalia, J., dissenting)).

Plaintiffs meet the constitutional requirements for standing. The requirement that plaintiffs suffer an injury in fact is satisfied because the citizens Oregon is bring the action on behalf of, in *parens patriae,* would suffer economic harm if HELP's contractual limitations were enforceable.[17] Enforcement of the contractual provisions at issue would be the direct causal connection to the injury plaintiffs hope to avoid. Finally, the redressability of the potential injury is clearly available, as a judgment for the plaintiffs will have the effect of avoiding the injury altogether.

■ The prudential requirement that plaintiffs be in the "zone of interests" protected by the dormant Commerce Clause does not bar plaintiffs' claim as defendant contends. The chief purpose underlying the dormant Commerce Clause is to limit "the power of the States to erect barriers against interstate trade." *Dennis v. Higgins,* 498 U.S. 439, 446, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991). Plaintiffs' complaint

---

**16.** The court will not consider the merits of HELP's defenses to this claim, i.e. the question of whether enforcement of HELP's contracts would constitute an undue burden on interstate commerce, for the same reasons it will not consider the merits of HELP's other affirmative defenses; namely, this court is examining a Motion to Dismiss, not a Motion for Summary Judgment. The merits of HELP's defenses are simply the inverse of the merits of plaintiffs' allegations, and are not a valid reason to dismiss the case under Rule 12(b)(6).

**17.** Although the harm can be viewed in many different ways, the most obvious relates to the expense of Oregon having to conduct regulatory stops instead of preclearing trucks electronically, or, alternatively, the cost of issuing carriers who already have a "HELP" transponder with a second, "Green Light" transponder.

adequately pleads facts which, if proven, could suggest sufficient state ratification of HELP's contracts that the enforcement would be seen as state action. While it is not entirely clear that the enforcement of the contract provisions would, indeed, constitute a "barrier against interstate trade", the assertions in the complaint, if believed, would support such a finding. If "electronic license plates" such as those offered by HELP and Green Light are indeed poised to replace the "old" and "obsolete" tin license plate,[18] then restrictions on whose transponders can be used in which states and at what cost could indeed prove to be an undue burden on interstate commerce. Thus, under the 12(b)(6) standard of examination, plaintiffs' complaint adequately asserts a claim under the Commerce Clause.

██ Similarly, plaintiffs' complaint adequately states a claim for relief under 42 U.S.C. § 1983. The same claim brought directly under the Commerce Clause is brought pursuant to § 1983, and defendant makes similar objections. Only one of defendants arguments against plaintiffs' § 1983 claim warrants independent analysis, namely defendant's assertion that plaintiffs do not qualify as "citizen[s]" or "person[s]" permitted a remedy under the statute.

42 U.S.C. § 1983 states, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress.

By its terms § 1983 is intended to provide a remedy for private citizens against those who would unlawfully deprive them of their rights under color of state authority. It is undisputed that Oregon citizens could bring a § 1983 action against HELP, if HELP was found to be acting under color of state authority. It stands to reason that plaintiff Oregon,[19] acting as *parens patraie*, may bring the suit to vindicate the rights of its citizens. *See, e.g., Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306, 314 (3rd Cir.1981), *cert. denied*, 458 U.S. 1121, 102 S.Ct. 3509, 73 L.Ed.2d 1383 (1982). Because plaintiffs have adequately pleaded facts which, if believed, could show that HELP operated under color of state authority, and because they have standing to assert a § 1983 action, dismissal of the claim under Rule 12(b)(6) would be inappropriate.

Defendant's Motion to Dismiss claim two pursuant to Fed.R.Civ.P. 12(b)(6) is denied.

### V. *Defendant's challenge to plaintiffs' third claim is inapplicable.*

Plaintiffs' third claim, seeking injunctive relief, is only challenged as being derivative of the first two claims, such that defendant's assertion that those claims do not state valid claims for relief operates to defeat plaintiffs' third claim as well. As the court has determined that plaintiffs' first and second claims do state valid claims for relief, this challenge has no basis and defendant's Motion to Dismiss claim three is denied.

### CONCLUSION

This court has subject matter jurisdiction over this controversy, and personal

---

18. Complaint (# 1) at ¶ 2.

19. Plaintiff Crunican's standing is apparently not challenged.

jurisdiction over defendant HELP. Plaintiffs have standing to assert claims for declaratory and injunctive relief under 28 U.S.C. § 1331, 42 U.S.C. § 1983, and Article I, Section 8 of the United States Constitution, and have sufficiently pleaded their claims. Defendant's Motion to Dismiss (# 8) is denied.