**METROPOLITAN LIFE INSURANCE COMPANY, a corporation, Plaintiff–Appellant,**

v.

**James Lee NEAVES, Jr., Defendant–Appellant,**

and

**Geneva S. Gambrell, Defendant–Appellee.**

**And Related Counterclaim and Cross–Claim.**

Nos. 88–1603, 88–1604.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1989.

Decided Aug. 27, 1990.

Richard J. Kilmartin, Knight, Boland & Riordan, San Francisco, Cal., for plaintiff-appellant Metropolitan Life Ins. Co.

John H. Bix, Mintz, Giller, Himmelman & Mintz, Oakland, Cal., for defendant-appellant James Lee Neaves, Jr.

Mark J. Romeo, Livingston & Weiss, San Francisco, Cal., for defendant-appellee Geneva Gambrell.

Before SCHROEDER, NELSON and WIGGINS, Circuit Judges.

SCHROEDER, Circuit Judge:

This is a declaratory judgment action by Metropolitan Life Insurance Company to determine whether it correctly paid the entire proceeds of a life insurance policy to defendant-appellee Geneva Gambrell who was one of two designated beneficiaries. Defendant-appellant Neaves claims he was the second designee. The district court granted Gambrell's motion to dismiss for lack of personal jurisdiction and both the insurer and Neaves appeal. The issue we must decide is whether Geneva Gambrell's conduct in inducing Metropolitan to pay all of the proceeds to her constituted a sufficient connection with the state of California to support the exercise of personal jurisdiction over her in that state. The case is set in a factual scenario with some bizarre twists.

The insured in the case was Ronald Gambrell, Geneva Gambrell's son. He worked for the United States Office of Personnel Management in California, and he was insured under a group life insurance policy issued to that federal office by the appellant, Metropolitan Life, pursuant to the Federal Employees' Group Life Insurance Act of 1954, as amended, 5 U.S.C. §§ 8701 *et seq.* (1982). Ronald Gambrell died on August 28, 1985 in California. He had designated two beneficiaries under the life insurance policy. One was his mother, appellee Geneva Gambrell, who is a citizen of Alabama; the other designation was "James L. Neaves, Jr., nephew." They were designated as equal co-beneficiaries under the policy.

It is clear that the appellee Geneva Gambrell was the insured's mother and is one of the designated co-beneficiaries. The circumstances surrounding the identity of the second designated beneficiary, James Neaves, are more clouded. This is because although the insured had a nephew named James Neaves, the defendant-appellant in this action, James Neaves, is not that person.

The original "James Neaves, Jr.," was defendant-appellee Geneva Gambrell's grandson and the insured, Ronald Gambrell's nephew. That James Neaves died, however, in an automobile accident in Alabama in 1977, years before any of the events related to this insurance policy occurred. A person named Paul Hunter Phillips, who was a friend of Ronald Gambrell, had been charged with cultivation of marijuana. Apparently, for reasons related to those charges, Phillips arranged his own fake suicide. He then assumed the name of "James Lee Neaves, Jr." with the alleged assistance and approval both of Ronald Gambrell, the insured, and the real Neaves' mother, Loretta Neaves. Both men, "Neaves" and Ronald Gambrell, later moved to California.

Thus, when Ronald Gambrell designated "Neaves" as a co-beneficiary in 1985, appellant Neaves claims Gambrell was referring to Phillips in his assumed identity of James Neaves. In this opinion we refer to him as Neaves. Neaves had lived in California for several years.

The district court considered the jurisdictional issues on the basis of the pleadings and of affidavits submitted by appel-

lants to support jurisdiction.[1] The affidavits submitted by Neaves state that the insured's mother, appellee Gambrell, not only knew at the time of her son's death that appellant Neaves had been named as a co-beneficiary in the policy, but that Gambrell actually visited the hospital in California before her son died and spoke with appellee Neaves about his designation.

After Ronald Gambrell's death, Loretta Neaves, the real Neaves' mother, called the United States Department of Health and Human Services, the office responsible for administering the insurance claims under the Metropolitan policy. Loretta Neaves told the agency that James Lee Neaves, Jr. was her son and that he was deceased. The Department of Health and Human Services then mailed the necessary forms to appellee Gambrell in Alabama, who returned a signed form to Metropolitan Life in California stating that Neaves was dead and accompanying the form with the death certificate for James Lee Neaves, Jr. Metropolitan Life then paid appellee Gambrell the full policy proceeds of $74,000 plus interest. For the purposes of this appeal, we view the record in a light most favorable to plaintiff. *See* note 1, *supra*. We assume Gambrell acted with the fraudulent intent to deprive Neaves of his share of the proceeds.

After that payment was made, Neaves in September 1985, contacted HHS, identified himself as the co-beneficiary under the Gambrell policy and learned that Metropolitan Life had paid all the insurance proceeds to Geneva Gambrell. In May 1986 he contacted Metropolitan directly, claiming to be the beneficiary entitled to receive one-half of the policy proceeds.

Metropolitan then filed this declaratory judgment action against both Neaves and Gambrell invoking the diversity jurisdiction of the United States District Court for the Northern District of California and asking that it determine the rights and duties of the parties. The complaint alleged that if Metropolitan was obligated to pay any sum to Neaves, then it should have a judgment of indemnity for that amount against Geneva Gambrell. Metropolitan's theory is that Gambrell fraudulently submitted the proof of death of Neaves in order to collect the entire proceeds of the policy. Neaves filed a counterclaim against Metropolitan for one-half the policy benefits and a cross-claim against Gambrell for fraud, conversion and infliction of emotional distress. Thus both Metropolitan and Neaves have asserted claims against Geneva Gambrell for fraudulently representing that the person she knew to be the intended beneficiary on the policy was dead.

The district court dismissed Neaves' and Metropolitan's claims against Gambrell for lack of personal jurisdiction on the ground that, because she was a citizen of Alabama and because her only relevant conduct in the case was to mail allegedly fraudulent papers to California, it was unreasonable to subject her to the jurisdiction of California courts. Metropolitan Life and Neaves appeal, following the district court's Rule 54(b) certification. They argue persuasively that the district court should have exercised jurisdiction over Geneva Gambrell. They urge that if Gambrell submitted the fraudulent forms to Metropolitan, Gambrell intentionally caused an injury to Neaves in California as a result of that fraud. This intentional act permits California's exercise

1. Where, as here, the court decides to resolve a motion to dismiss involving disputed facts without an evidentiary hearing, and instead chooses to rely on pleadings and affidavits alone, the plaintiff must make only a prima facie showing of personal jurisdiction over the defendant to defeat the defendant's Rule 12(b)(2) motion. *Data Disc, Inc. v. Systems Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir.1977). If the plaintiff succeeds in meeting that prima facie burden, then the district court may still order an evidentiary hearing, *id.* at 1285, or the matter may be brought up again at trial. *See* 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1373 at 557 (1990) ("The determination of a defense on a motion prior to trial is not so final that it prevents the court from reconsidering its ruling at any time prior to judgment."). Ultimately, either at trial or in the evidentiary hearing, "the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence." *Cutco Industries v. Naughton*, 806 F.2d 361, 364 (2d Cir.1986); *Data Disc*, 557 F.2d at 1285. However, in establishing its prima facie case, the documents submitted by the plaintiff "are construed in the light most favorable to the plaintiff and all doubts are resolved in its favor." *Cutco*, 806 F.2d at 365.

of jurisdiction over Gambrell because she received proceeds that should have been paid to a resident of California. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1980). We agree.

■ A federal district court sitting in diversity has in personam jurisdiction over a defendant to the extent the forum state's law constitutionally provides. *Data Disc, Inc. v. Systems Technology Ass'n,* 557 F.2d 1280, 1286 (9th Cir.1977) The California long-arm statute, Cal.Civ.Proc.Code § 410.10, "provides for personal jurisdiction to the full extent allowed by the requirements of due process," as defined by the United States Supreme Court. *Taubler v. Giraud,* 655 F.2d 991, 993 (9th Cir.1981); *Data Disc,* 557 F.2d at 1286.

We have applied a three-part test to determine the constitutionality of an assertion of specific personal jurisdiction over a non-resident:

1. The non-resident must do some act or consummate some transaction with the forum or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

2. The claim must be one which arises out of or results from the defendant's forum-related activities.

3. Exercise of jurisdiction must be reasonable.

*Corporate Inv. Business Brokers v. Melcher,* 824 F.2d 786, 789 (9th Cir.1987) (emphasis in original).

■ In order to satisfy the first prong of this test, the defendant need not have been physically present in the jurisdiction to conduct the activity giving rise to the cause of action. As we pointed out in *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392 (9th Cir.1986), the Supreme Court "has allowed the exercise of jurisdiction over a defendant whose only 'contact' with the foreign state is the 'purposeful direction' of a foreign act having effect in the forum state. *See, e.g., Calder v. Jones,* 465 U.S. 783, 789 [104 S.Ct. 1482, 1487, 79 L.Ed.2d 804] (1984)." *Id.* at 1397 (emphasis omitted).

In *Calder v. Jones,* the defendants were a reporter and editor who were Florida residents. The reporter wrote and the editor edited an article allegedly libeling the plaintiff in Florida. The defendants' newspaper printed the article in Florida and circulated it into California, where the plaintiff alleged it caused her injury. The Supreme Court held that even though the defendants were not responsible for the circulation of the article in California, they knew that their "intentional, and allegedly tortious, actions ... would have a potentially devastating impact upon [the plaintiff]. And they knew that the brunt of that injury would be felt by [the plaintiff] in the state in which she live[d] and work[ed]." *Id.* at 789–90, 104 S.Ct. at 1487. Thus, said the Supreme Court, "petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause[d] the injury in California." *Id.* at 790, 104 S.Ct. at 1487 (citations omitted).

■ Assuming as we must that the facts in appellant's affidavits are true, appellee Geneva Gambrell both purposefully directed her actions into the forum state and knew the brunt of the injury would fall on Neaves who lived and worked there. She asks us, however, to focus only on her conduct in mailing the fraudulent information, contending that it was "only fortuitous" that the mailing was directed to California as opposed to, for example, Metropolitan's headquarters in New York. This argument, however, ignores the relevant consideration under *Calder* of the effect of the conduct in the forum state. When Gambrell addressed the envelope to Metropolitan, she was purposefully defrauding Neaves in California.

There is another factor which adds to the reasonableness of the court's exercise of jurisdiction in this case. Neaves and Geneva Gambrell are each claiming they are entitled to proceeds of the same insurance policy. Where there are disputed claims to

the proceeds of an insurance policy, and the claimants are of diverse citizenship, the district courts may exercise original jurisdiction and entertain an interpleader action filed by the custodian of the policy proceeds. 28 U.S.C. § 1335. Had Metropolitan known of the existence of Neaves' claim prior to its payment of the proceeds to Gambrell, it could have filed an interpleader action in California in order to adjudicate the merits of the competing claims. Metropolitan has made a showing here for jurisdictional purposes that Gambrell's conduct prevented it from learning of Neaves' competing claim until after it was too late to file such an action. This makes it even more difficult for Gambrell to contend that the California court's exercise of jurisdiction over her is unreasonable in this case.

The district court's order dismissing the claims of Neaves and Metropolitan against Gambrell is REVERSED and the matter is REMANDED.