**BANCROFT & MASTERS, INC.,
a California corporation,
Plaintiff–Appellant,**

v.

**AUGUSTA NATIONAL INC., a Georgia corporation, Defendant–Appellee.**

No. 99–15099.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 13, 2000.

Filed Aug. 18, 2000.

Douglas A. Charkin, Peninsula IP Group, Morgan Hill, California, for the plaintiff-appellant.

Carla B. Oakley, Brobeck, Phleger & Harrison LLP, San Francisco, California, for the defendant-appellee.

Before: SNEED, SCHROEDER, and TROTT, Circuit Judges.

Opinion By Judge SCHROEDER; Concurrence by Judge SNEED.

SCHROEDER, Circuit Judge:

This is a trademark dispute. The principal issue is whether the district court in California has personal jurisdiction over the defendant, a Georgia corporation. We hold that the district court can exercise specific jurisdiction over this suit because the complaint alleges the defendant engaged in wrongful conduct that individually targeted the plaintiff in California.

## BACKGROUND

Plaintiff-appellant Bancroft & Masters, Inc. ("B & M") is a small California corporation that sells computer and networking products and support services. B & M does almost all of its business in the San Francisco area. It brought this action against defendant-appellee Augusta National Inc. ("ANI"), which operates the Augusta National Golf Club in Augusta, Georgia and sponsors the annual PGA Tour event known as the Masters Tournament.

ANI holds several federally registered trademarks for the mark "Masters" and operates a website at the domain name "masters.org." B & M registered the domain name "masters.com" with Network Solutions, Inc. ("NSI") in 1995. Until recently, NSI was the sole registrar of do-

main names in the United States, under an exclusive contract with the U.S. government. B & M alleges that sometime in late 1997, ANI sent a letter to NSI's Virginia headquarters challenging B & M's use of the domain name masters.com. ANI also sent a letter to B & M in California demanding that B & M cease and desist its use of masters.com and transfer it immediately to ANI.

ANI's letter to NSI triggered NSI's then-applicable dispute resolution policy. Under this policy, B & M had three options: (1) voluntarily transfer the masters.com domain name to ANI; (2) allow the domain name to be placed "on hold," meaning that it could not be used by either party; or (3) obtain a declaratory judgment establishing its right to use the masters.com domain name. *See Lockheed Martin Corp. v. Network Solutions, Inc.,* 194 F.3d 980, 982 (9th Cir.1999) (explaining NSI's procedures). Rather than give up its website, B & M chose the third option. B & M filed suit in the Northern District of California seeking a judgment declaring non-dilution and non-infringement. B & M's complaint also requested in a separate count that the court order the cancellation of ANI's federally registered trademarks.

The district court granted ANI's motion to dismiss for lack of personal jurisdiction, reasoning that the continuous and systematic contacts in California necessary for general jurisdiction were lacking and that B & M had not satisfied the criteria for specific jurisdiction. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 45 F.Supp.2d 777 (1998). B & M appeals this dismissal. We now hold that the district court had specific jurisdiction and reverse and remand. ANI's contention that its settlement offer moots this appeal is without merit.

## DISCUSSION

█ ANI's threshold argument is that this appeal has been rendered moot because ANI has offered to waive all trademark infringement, dilution, and unfair competition claims against B & M, so long

as B & M stays out of the golf business. B & M's request for a declaratory judgment that it is entitled to use the domain name is not moot, however, because ANI has not made the requisite showing that it is absolutely clear that it will never seek to prevent B & M from using its domain name in the future. *See FTC v. Affordable Media, LLC,* 179 F.3d 1228, 1238 (9th Cir. 1999) (A declaratory judgment action is not moot unless it is absolutely clear that the defendant will never renew its allegedly wrongful behavior.). ANI's promise was an incomplete and qualified one.

Furthermore, even if ANI's promise had been unqualified, it would not have mooted B & M's separate request for cancellation of ANI's "Masters" trademarks. The trademark cancellation count is separate from the declaratory judgment count in the complaint and does not appear to be obviously meritless. *Cf. Arizonans For Official English v. Arizona,* 520 U.S. 43, 71, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (obviously meritless and belatedly asserted damages claim cannot save appeal from mootness). The Lanham Act authorizes district courts to order trademark cancellation in any action involving a registered mark. *See* 15 U.S.C. § 1119.

ANI further suggested at oral argument that the case may be moot because NSI's dispute resolution procedures have recently changed. This argument was neither developed on appeal nor adequately supported in the record. As a result, we are unable to evaluate that suggestion on the record before us.

█ ANI also contends that there is insufficient evidence in the record to establish jurisdiction. Where, as here, however, the district court does not hold an evidentiary hearing but rather decides the jurisdictional issue on the basis of the pleadings and supporting declarations, we will presume that the facts set forth therein can be proven. *See Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 268 (9th Cir.1995). ANI's challenge to the eviden-

tiary basis for the district court's ruling is therefore irrelevant.

### General Jurisdiction

■ California permits the exercise of personal jurisdiction to the full extent permitted by due process. *See* Cal. Civ.Code § 410.10. Whether a California court has personal jurisdiction over ANI thus depends on whether B & M has alleged "minimum contacts" between ANI and the state of California for purposes of general or specific jurisdiction. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■■ A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). This is known as general jurisdiction. The standard for establishing general jurisdiction is "fairly high," *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986), and requires that the defendant's contacts be of the sort that approximate physical presence. *See Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984). Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *See Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1478 (9th Cir.1986).

■ The district court correctly found general jurisdiction lacking in this case, because ANI's contacts do not qualify as either substantial or continuous and systematic. ANI is not registered or licensed to do business in California. It pays no taxes in California, maintains no bank accounts in California, and targets no print, television, or radio advertising toward California. ANI's masters.org website is "passive," i.e., consumers cannot use it to make purchases. Furthermore, ANI's occasional, unsolicited sales of tournament tickets and merchandise to California residents are insufficient to create general jurisdiction. *See Brand,* 796 F.2d at 1073 (occasional sales to California residents insufficient to create general jurisdiction).

■ ANI continues to have license agreements with two television networks and a handful of California vendors. These agreements constitute doing business with California, but do not constitute doing business in California. *See Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868 (no general jurisdiction in Texas over helicopter transportation company that purchased 80 percent of its helicopters, spare parts, and accessories from Texas sources over a four year period). This is because engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders. *See id. Compare Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 447, 72 S.Ct. 413, 96 L.Ed. 485 (1952) (upholding Ohio's exercise of general jurisdiction over corporation where corporation's president worked out of an office in Ohio from which he drew and distributed payroll checks, performed corporation's filing and correspondence, and held regular directors' meetings, and where the corporation held two Ohio bank accounts). ANI's limited contacts with California are insufficient to establish general jurisdiction.

### Specific Jurisdiction

■ Even though there is no general jurisdiction over ANI in California, California courts may still exercise personal jurisdiction if the case arises out of certain forum-related acts. This "specific" jurisdiction exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable. *See Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir.1997).

■ The claims in this case center on ANI's letter to NSI in Virginia, which forced B & M to bring suit or lose control of its website. B & M argues that this letter, addressed to Virginia but intended to affect B & M in California, constitutes "purposeful availment" under the "effects test" first announced by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). ANI describes the letter as purely defensive, aimed only at protecting its intellectual property rights from incursion by B & M. B & M's complaint, however, contends that ANI deliberately triggered NSI's dispute resolution procedures not only to defend its own trademarks but also to interfere wrongfully with B & M's use of its domain name and to misappropriate that name, "masters.com," for ANI's own use. Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt B & M's version of events for purposes of this appeal.

■ In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis. To meet the effects test, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998). Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction. We have said that there must be "something more," but have not spelled out what that something more must be. *See Panavision*, 141 F.3d at 1322.

■ We now conclude that "something more" is what the Supreme Court described as "express aiming" at the forum state. *See Calder*, 465 U.S. at 789, 104 S.Ct. 1482. Express aiming is a concept that in the jurisdictional context hardly defines itself. From the available cases, we deduce that the requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. For example, in *Calder* itself, the defendants were a reporter and an editor of a nationally-circulated tabloid newspaper whom plaintiff, a well-known California resident, accused of libel. The defendants argued that the alleged wrong had no intended nexus with California and that they should be treated like "a welder employed in Florida who works on a boiler which subsequently explodes in California." *Id.* The Supreme Court rejected this proposed analogy, pointing out that "petitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." *Id.*

Subsequent cases from this circuit bear out the conclusion that "express aiming" encompasses wrongful conduct individually targeting a known forum resident. In *Metropolitan Life Insurance Co. v. Neaves*, 912 F.2d 1062 (9th Cir.1990), we held that an Alabama resident could be haled into a California court on the basis of a letter she sent to an insurance company representing that she was entitled to an insurance payment that actually belonged to a California resident. We stated that under *Calder*, it was irrelevant where the letter was sent. The critical factor was that in sending the letter, the defendant "was purposefully defrauding [plaintiff] in California." 912 F.2d at 1065. Similarly, in *Brainerd v. Governors of the University of Alberta*, 873 F.2d 1257 (9th Cir.1989), we held that an Arizona court could exercise specific jurisdiction over Canadian residents who, in response to telephone calls directed to them in Canada, made statements that allegedly defamed a person they knew resided in Arizona. *Id.* at 1259–60. Even though the Canadian defendants had not initiated the telephone

calls, the statements they made about the plaintiff during the conversations were not "untargeted negligence" but rather were "performed for the very purpose of having their consequences felt in the forum state." *Id. See also Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir.1996) (holding that specific jurisdiction existed in light of evidence of "targeting" of the plaintiff, who was a forum resident); *Lake v. Lake*, 817 F.2d 1416, 1422–23 (9th Cir.1987) (holding that specific jurisdiction existed where defendant performed foreign acts for the purpose of having their consequences felt in the forum state); *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1398 (9th Cir.1986) (finding purposeful availment where forum effect of a foreign act "was not only foreseeable, it was contemplated and bargained for").

The presence of individualized targeting is what separates these cases from others in which we have found the effects test unsatisfied. In *Cybersell*, for example, there was no showing that the defendants even knew of the existence of the plaintiffs, let alone targeted them individually. *See* 130 F.3d at 420. *See also Gordy*, 95 F.3d at 833 (distinguishing certain cases holding that no personal jurisdiction existed under *Calder* on the ground that in those cases targeting was lacking).

Applying these concepts to the instant case, we conclude that B & M has demonstrated purposeful availment by ANI under the *Calder* effects test. ANI acted intentionally when it sent its letter to NSI. The letter was expressly aimed at California because it individually targeted B & M, a California corporation doing business almost exclusively in California. Finally, the effects of the letter were primarily felt, as ANI knew they would be, in California.

This case resembles *Panavision*, in which an Illinois resident registered as his domain name a California corporation's trademark. Though this activity was conducted outside of California, it was clear that the defendant's deliberate choice of the plaintiff's trademark, and his subsequent attempts to extort compensation for

his conveyance of the domain name, targeted that individual plaintiff. *See Panavision*, 141 F.3d at 1321. Here, too, ANI was well aware that B & M currently held the masters.com website and that it was B & M that would be affected if the NSI dispute resolution procedures were triggered. This is sufficient to satisfy *Calder* and thereby demonstrate the purposeful availment necessary for an exercise of specific jurisdiction.

■ The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit. We measure this requirement in terms of "but for" causation. *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir.1995). This requirement is met here. But for the letter to NSI, which under the NSI dispute resolution procedures forced B & M to choose between bringing this suit and losing the use of its website, it is clear that B & M would have no need for a judicial declaration of its right to use masters.com.

■ The final requirement for specific jurisdiction, and the one that the district court apparently found to be lacking, is reasonableness. For jurisdiction to be reasonable, it must comport with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). *Burger King* explicitly places upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a "compelling case." *Id.* at 476–77, 105 S.Ct. 2174. The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id.*

In the district court, ANI attempted no factual showing with regard to the *Burger King* factors. Instead, ANI stated without elaboration that jurisdiction would be unreasonable. ANI supported this assertion with citations to various district court cases and two pre-*Burger King* cases from this circuit holding that a cease-and-desist letter sent by a trademark holder to a putative infringer is not, by itself, a sufficient basis for personal jurisdiction in the putative infringer's home state. *See Kransco Mf'g, Inc. v. Markwitz,* 656 F.2d 1376 (9th Cir.1981); *Cascade Corp. v. Hiab–Foco AB,* 619 F.2d 36 (9th Cir.1980); *Douglas Furniture Co. v. Wood Dimensions, Inc.,* 963 F.Supp. 899 (C.D.Cal. 1997). This is inadequate to discharge *Burger King*'s requirement that the defendant demonstrate a "compelling case," focused on the seven specific factors listed above, in order to establish unreasonableness. ANI did not focus on the *Burger King* factors and apply them to the particular circumstances of this case.

Moreover, the cases on which ANI relies are inapposite because they concern only cease-and-desist letters. This case does not arise solely out of ANI's cease-and-desist letter to B & M, which placed B & M on notice of ANI's competing claim. This case arises principally out of ANI's letter to NSI, and that letter did more than warn or threaten B & M. Under NSI procedures, the letter would have operated automatically to prevent B & M from using its website had B & M not filed suit. ANI has not demonstrated any hardship or any other specific factor suggesting that jurisdiction in California would be unreasonable. We therefore conclude that the reasonableness requirement is met.

### CONCLUSION

The district court's order dismissing the case for lack of personal jurisdiction is reversed, and the case is remanded for further proceedings. We decline B & M's request for 28 U.S.C. § 1927 sanctions against ANI for its attempt to have this

appeal dismissed as moot. ANI's mootness argument was neither unreasonable nor vexatious, and does not appear to have been raised in bad faith.

### REVERSED AND REMANDED.

SNEED, Circuit Judge, with whom TROTT, Circuit Judge, joins, Concurring:

The "effects test" has normally been restricted to tortious conduct in which the "aimer" in state Y was seeking to injure wrongfully the target in state X. I concur in the opinion only on the assumption that Augusta National, through its letter to NSI, engaged in tortious conduct, i.e., that they intended to effect a conversion of the masters.com domain name.

I am skeptical of Bancroft & Masters's selection of masters.com as its domain name. I suspect that Augusta National's initial reaction was similar. Therefore, I do not find it implausible that Augusta National, through its letter to NSI, merely intended to protect its trademark from dilution and infringement. At this point, however, there is insufficient information with which to make such a judgment. Jurisdiction in California would be ripe for challenge if following the development of trial it should appear that Augusta National acted reasonably and in good faith to protect its trademark against an infringer.