**DBSI SIGNATURE PLACE, LLC, an Idaho limited liability company, Plaintiff,**

v.

**BL GREENSBORO, L.P., a Texas Limited Partnership, LS Northline, LLC, a Texas limited liability company, and Mark J. Sullivan, Defendants.**

**Alliance Commercial Properties, LLC, an Idaho limited liability company, Third–Party Plaintiff,**

v.

**DBSI Signature Place, LLC, an Idaho limited liability company; Bl Greensboro, L.P., a Texas limited partnership, Third–Party Defendants.**

**No. CV 05–051–S–LMB.**

United States District Court, D. Idaho.

July 25, 2005.

Robert B. Burns, Moffatt Thomas Barrett Rock & Fields, Boise, ID, for Plaintiff.

Andrew C. Brassey, Brassey Wetherell Crawford & McCurdy, Boise, ID, John W. Greene, Arlington, TX, for Defendants.

Brian F. McColl, Wilson & McColl, Boise, ID, for Third–Party Plaintiff.

## ORDER

BOYLE, District Judge.

Currently pending before the Court are Defendants' Motion to Dismiss Mark J. Sullivan for lack of personal jurisdiction (Docket No. 15), Defendants' Motion to Transfer Venue (Docket No. 16), Plaintiff's Motion For Leave to File First Amended Complaint (Docket No. 17), Third–Party Plaintiff's Motion to Amend Third–Party Complaint (Docket No. 27), Plaintiff's Motion for Leave to File (i) Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss Mark J. Sullivan, and (ii) Affidavit of Walt Mott (Docket No. 32), and Defendants' Motion to Strike Portions of Affidavit of Walt Mott (Docket No. 35). Having carefully reviewed the record, considered oral arguments, and otherwise being finally advised, the Court enters the following Order.

## I.

## BACKGROUND

The present action arises out of the purchase of a commercial office complex ("Signature Place") in Greensboro, North Carolina. *Amended Complaint*,[1] ¶¶ 7, 9, 11 (Docket No. 18). In July of 2004, DBSI Housing, Inc., the affiliated predecessor in interest to Plaintiff DBSI Signature Place LLC ("DBSI Signature Place"), executed an Ernest Money Contract ("Contract") for the purchase of Signature Place from Defendant BL Greensboro, L.P. ("Greensboro").[2] *Id.* at ¶ 7; *Mott Affidavit*, ¶¶ 2, 3 (Docket No. 33, Att. 2). Defendant LS Northline, LLC ("Northline"), a Texas limited liability company, is the sole general partner of Greensboro. *Amended Complaint*, ¶ 3 (Docket No. 18). Defendant Mark J. Sullivan, a Texas resident, is vice-president of Northline. *Id.* at ¶ 4.

The Contract for the purchase of Signature Place does not specifically address which entity is responsible to pay certain liabilities to Greensboro Orthopedic Center, P.A. ("GOC"), a tenant at Signature Place, or who must pay a leasing commission allegedly owing to Alliance Commer-

---

1. When ruling on a motion to dismiss for lack of personal jurisdiction, uncontroverted allegations in the complaint must be taken as true and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir.2002). Accordingly, the Background section relies on facts from Plaintiff's First Amended Complaint and various affidavits.

2. Both DBSI Signature Place and DBSI Housing are Idaho limited liability companies with their principal place of business in Ada County, Idaho. *Amended Complaint*, ¶ 1 (Docket No. 18); *Mott Affidavit*, ¶¶ 2–3 (Docket No. 33, Att. 2). Greensboro is a Texas limited partnership with its principal place of business in Dallas, Texas. *Amended Complaint*, ¶ 2 (Docket No. 18).

cial Properties ("Alliance Commercial"), the Third–Party Plaintiff in the present action. *Id.* at ¶¶ 5, 9, 12. One month before DBSI Housing entered into the Contract, Greensboro executed a lease with GOC providing that GOC would receive $40.00 per rentable square foot for tenant improvements (the "Tenant Upfit Allowance"), due upon completion of GOC's improvements. *Id.* at ¶ 5. On or about December 1, 2004, GOC completed its improvements and satisfied the conditions for payment of the Tenant Upfit Allowance, but Greensboro refused to pay. *Id.* at ¶¶ 6, 11. DBSI Signature Place has now paid GOC for the Upfit Allowance and also has received demand from Alliance Commercial for payment of the leasing commission on the GOC lease. *Id.* at ¶¶ 11, 13.

To determine who is responsible for the payments to GOC and Alliance Commercial, DBSI Signature Place filed the present action on January 31, 2005 in state court. *Notice of Removal,* Ex. C (Docket No. 1). Defendants removed the action to federal court. *Id.* DBSI Signature Place has alleged both contract and tort claims against Defendants Greensboro and Northline, but only tort claims against Defendant Sullivan. *Amended Complaint* (Docket No. 18). The alleged tortious conduct forming the basis for Plaintiff's tort claims is Sullivan's representation to DBSI Housing that "Defendant Greensboro was obligated to pay, and would pay when due, all costs associated with the [GOC Lease], which costs include both the Tenant Upfit Allowance and the second half of the leasing commission payable with respect to the [GOC Lease] to Alliance Commercial." *Id.* at ¶ 9.

In response to Plaintiff's Complaint, Defendants have filed an Answer and a Motion to Dismiss Defendant Sullivan for lack of personal jurisdiction. They also have filed a Motion to Transfer Venue. DBSI

Signature Place has objected to both Motions and has filed a Motion for Leave to File First Amended Complaint. Third–Party Plaintiff Alliance Commercial also seeks leave to amend its Third–Party Complaint.

## II.

## PRELIMINARY MATTERS

### A. Motions to Amend

Plaintiff DBSI Signature Place has filed a Motion for Leave to File First Amended Complaint (Docket No. 17), and Third–Party Plaintiff Alliance Commercial has filed a Motion to Amend Third–Party Complaint (Docket No. 27). At the July 12, 2005 hearing all parties noted their non-objection to these amended pleadings. Because the Motions are unopposed, the Court grants both requests for amendment.

### B. Motion for Leave to File Supplemental Materials

Plaintiff DBSI Signature Place has requested leave to file (i) a Supplemental Memorandum in Opposition to Motion to Dismiss Mark J. Sullivan, and (ii) the Affidavit of Walt Mott. (Docket No. 32). Plaintiff requests that the Court consider these materials in response to Defendants' Reply Memorandum in Support of Motion to Dismiss and Motion to Transfer Venue, even though no further briefing is provided for by the Local Rules. The Court desires to provide each party with a full and fair opportunity to present their arguments. For this reason, the Court previously granted Defendants' request to file an over-length reply brief, *Order* (Docket No. 23), and allowed Defendants additional time to file that reply brief, *Order* (Docket No. 25). Defendants' 19–page reply brief is almost twice the length allowed by the Local Rules and is supported

by two supplemental affidavits. *See Reply Memorandum* (Docket No. 29); *Sullivan Affidavit* (Docket No. 29, Att. 1); *Graham Affidavit* (Docket No. 29, Att. 2). In contrast, Plaintiff's proposed Supplemental Memorandum is only six pages in length and responds only to issues raised in Defendants' reply brief. *See Supplemental Memorandum* (Docket No. 33, Att. 1). Additionally, Defendants had the opportunity to respond and object to Plaintiff's supplemental materials at the July 12, 2005 hearing. For these reasons, the Court determines that it is appropriate to consider Plaintiff's supplemental brief and supporting affidavit, and therefore grants Plaintiff's Motion.

## C. Defendants' Motion to Strike

During the July 12, 2005 hearing, counsel for Defendants moved to strike as conclusory part of paragraph five of the Affidavit of Walt Mott.[3] Paragraph five states: "Based on the fact that both DBSI Housing Inc. and its subsidiary DBSI Signature Place, LLC were formed in Idaho and have their principal place of business in Idaho, the harm resulting from fraudulent representations made by Mark J. Sullivan would be incurred here in Idaho." *Mott Affidavit,* ¶ 5 (Docket No. 33, Att. 2).

Plaintiff argues that this statement is "a legal fact established by the holding in *Dole Food Co." Plaintiff's Opposition,* p. 3 (Docket No. 36). An affidavit, however, should be based on personal knowledge and its allegations should not contain ultimate or conclusory facts and conclusions of law. *See* 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10B FED. PRAC. & PROC. CIV.3D § 2738 (discussing affidavits in the summary judgment context). The word "because" and the phrase

"the harm resulting from fraudulent representations made by Mark J. Sullivan would be incurred here in Idaho" make the statement in paragraph five tantamount to a legal conclusion. Accordingly, the Court grants Defendants' Motion to Strike these portions of the statement from paragraph five of the Affidavit.[4]

## III.

## MOTION TO DISMISS

### A. Legal Standards for Motions to Dismiss for Lack of Personal Jurisdiction

DBSI Signature Place, as the plaintiff, bears the burden of demonstrating that this Court has personal jurisdiction over Defendant Sullivan. *Data Disc, Inc. v. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). To evaluate whether personal jurisdiction exists, uncontroverted allegations in the Complaint are taken as true and conflicts between parties over statements in affidavits are resolved in the plaintiff's favor. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1108 (9th Cir.2002). Also, where, as here, the motion is based on written materials rather than on an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to survive the motion to dismiss. *Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995). In other words, if a plaintiff's proof on the jurisdictional issue is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.

In order to establish the existence of personal jurisdiction in this case, DBSI

---

3. The day after the hearing, Defendants also filed a written Motion to Strike (Docket No. 35), to which Plaintiff responded on July 14, 2005 (Docket No. 36).

4. The Court notes, however, that even if paragraph five were considered it would have no impact on the Court's decision on the Motion to Dismiss.

Signature Place must show that (1) Idaho's long-arm statute confers personal jurisdiction over the nonresident Defendant, and (2) the exercise of jurisdiction accords with federal constitutional principles of due process. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.1987).

### i. Long–Arm Statute

The Supreme Court of Idaho imposes a two-part test for an Idaho court to exert jurisdiction over an out-of-state defendant. *See Smalley v. Kaiser*, 130 Idaho 909, 912, 950 P.2d 1248 (1997). First, the act giving rise to the cause of action must fall within the scope of Idaho's long-arm statute and, second, the constitutional standards of due process must be met. *Id.*

Idaho's long arm statute grants jurisdiction to Idaho courts over causes of action which arise from, among other things, "[t]he commission of a tortious act within this state." Idaho Code § 5–514(b). The Supreme Court of Idaho has analyzed this long arm statute as follows:

> I.C. § 5–514 must be liberally construed. The statute was designed to provide a forum for Idaho residents; (a)s such, the law is remedial legislation of the most fundamental nature.... By enacting the statute the legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.

*Intermountain Bus. Forms, Inc. v. Shepard Bus. Forms Co.*, 96 Idaho 538, 540–41, 531 P.2d 1183 (1975) (citations and internal quotation marks omitted). *See also Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 140 Idaho 121, 124, 90 P.3d 346 (2004). Thus, the inquiry is the same under both Idaho's long arm statute and the

federal due process clause. *See Lake*, 817 F.2d at 1420 (explaining that the Idaho and federal limits on personal jurisdiction are coextensive). When the limits on jurisdiction are coextensive, the court "need only analyze whether the exercise of jurisdiction comports with due process." *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1194 (9th Cir.1988). *See also Dole Food*, 303 F.3d at 1110.

### ii. Due Process

■ To satisfy due process, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Due process "does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). If the defendant's contacts are neither substantial, nor continuous and systematic, but the cause of action arises out of or is related to the defendant's forum activities, "limited" or "specific" personal jurisdiction exists.[5] Whether a forum state may assert specific jurisdiction depends on the quality and nature of the defendant's contacts with the forum state in relation to the cause of action. *See Lake*, 817 F.2d at 1421. Specifically, the Court may exercise "specific jurisdiction" when the following requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the fo-

---

**5.** The Court may exercise either general or specific jurisdiction over a defendant. *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996), *as amended* 95 F.3d 1156, 1996 WL 490789 (9th Cir.1996). Plain-

tiff does not argue that Sullivan's contacts are sufficient for the Court to exercise general jurisdiction, so the Court will analyze only whether the exercise of specific jurisdiction is appropriate.

rum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Lake*, 817 F.2d at 1421; *see also Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995).

### a. Purposeful Direction

The first requirement for specific jurisdiction is that the non-resident defendant purposefully direct his conduct toward a foreign state. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir.2004). The Ninth Circuit Court of Appeals has explained that, "the purposeful direction or availment requirement for specific jurisdiction is analyzed in *intentional tort* cases under the 'effects' test" derived from *Calder v. Jones*, 465 U.S. 783, 787–89, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).[6] *Dole*, 303 F.3d at 1111 (emphasis added). The Ninth Circuit has consistently applied the "effects" test to tort cases. *See, e.g., CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1111 (9th Cir.2004) (intentional interference and trademark infringement case); *Dole*, 303 F.3d 1104 (fraud case); *Core–Vent Corp., v. Nobel Indus. AB*, 11 F.3d 1482, 1485–86 (9th Cir.1993) (antitrust and libel case).

■ Under the effects test, a lack of physical contact with the forum state does not necessarily preclude the exercise of jurisdiction. Rather, the Court may exercise "jurisdiction over a defendant whose only 'contact' with the forum state is the 'purposeful direction' of a *foreign* act having *effect* in the forum state." *Core–Vent*, 11 F.3d at 1485 (citations and internal quotation marks omitted).

The effects test is satisfied if the defendant (1) commits an intentional act; (2) expressly aimed at the foreign state; (3) causing harm in the foreign state that the defendant knew was likely to be suffered in that state. *CE Distribution*, 380 F.3d at 1111. The express aiming "requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food*, 303 F.3d at 1111 (citing *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000)). Additionally, "when a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the 'effects' test permits that forum to exercise personal jurisdiction." *Dole Food*, 303 F.3d at 1114.

### b. Claim Must Relate to Forum Activities

■ The second requirement is that the contacts constituting purposeful availment be the ones that give rise to the current suit. *Bancroft & Masters*, 223 F.3d at 1088. The Ninth Circuit Court of Appeals measures this requirement in terms of "but for" causation. *Id.* "The 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum." *Shute v. Carnival Cruise Lines*,

---

**6.** A different test applies to contract cases. *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486 (9th Cir.1993). Each type of case requires different kinds of evidence to demonstrate purposeful availment/direction. A showing of purposeful availment in a *contract* case "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 803. In contrast, a showing of purposeful direction for *tort* cases "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum." *Id.*

897 F.2d 377, 385 (9th Cir.1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

### c. Reasonableness

■ The final requirement is that exercise of personal jurisdiction be reasonable. Courts are to presume that an otherwise valid exercise of specific jurisdiction is reasonable. *Ballard*, 65 F.3d at 1500. To avoid jurisdiction, the defendant must "present a *compelling* case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174 (emphasis in the original). In determining whether the exercise of jurisdiction comports with "fair play and substantial justice," and is therefore "reasonable," the Court should consider the following seven factors:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core–Vent*, 11 F.3d at 1487–88. None of these factors is dispositive, so the Court must engage in a balancing process. *Id.* at 1488.

### B. Motion to Dismiss Defendant Sullivan for Lack of Personal Jurisdiction

■ Plaintiff DBSI Signature Place alleges that Sullivan intentionally misrepre-

sented that Defendants would be responsible for paying the Tenant Upfit Allowance to GOC and the leasing commission to Alliance Commercial. If this intentional act was expressly aimed at DBSI Housing in Idaho, caused harm to DBSI Housing in Idaho, and Sullivan knew that the harm was likely to be suffered in Idaho, then personal jurisdiction over Sullivan is appropriate under the effects test for purposeful direction. *CE Distribution*, 380 F.3d at 1111.

Sullivan's allegedly tortious representations took place during a telephone call with Eric Gordon at DBSI Housing's Idaho office. *Amended Complaint*, ¶ 9 (Docket No. 18); *see also Supplemental Sullivan Affidavit*, ¶ 5 (Docket No. 29, Att. 1). Prior to this conversation, Sullivan, on behalf of Greensboro, had signed an Ernest Money Contract with DBSI Housing. This Contract reflected that DBSI Housing is an Idaho corporation with its principal place of business in Meridian, Idaho. *Mott Affidavit*, ¶ 3 & Ex. B (Docket No. 33, Att. 2). It is reasonable to infer from these facts that Sullivan had reason to know that he was dealing with an Idaho business and that the effect of his actions would resonate in Idaho.[7] This conclusion is supported by the Ninth Circuit Court of Appeals' decision in *Dole Food* where the court determined that "[b]ecause [Defendants] knew that Dole's principal place of business was in California, knew the decisionmakers for Dole were located in California, and communicated directly with those California decisionmakers, we conclude that their actions were 'expressly aimed' at the forum state." 303 F.3d at 1112. *See also Bancroft & Masters*, 223 F.3d at 1087 (finding "express aiming" *at California* because the defendant sent a

---

**7.** The Court recognizes that Sullivan reviewed and signed the Contract in his corporate, and not personal, capacity. However, the Court is not using these contacts as its basis for juris-

diction, but rather points out the contacts because they evidence Sullivan's knowledge that he was dealing with an Idaho business entity.

letter *to Virginia* with the alleged intent and result of disrupting the plaintiff's California business). Moreover, courts often rely "in significant part on the principal place of business in determining the location of a corporation's place of economic injury." 303 F.3d at 1113–14. The Court therefore concludes that Defendant Sullivan "expressly aimed" his actions to Idaho and knew that DBSI Housing would suffer harm in Idaho.

Defendants, however, argue that Defendant Sullivan did not know of the harm he would cause to Plaintiff DBSI Signature Place in Idaho because he made the allegedly tortious misrepresentations to *DBSI Housing,* and not to DBSI Signature Place. *Reply Memorandum,* pp. 4, 10 (Docket No. 29). Defendants have provided no authority stating that this fact precludes DBSI Signature Place, as the successor in interest to DBSI Housing, from recovering for wrongs committed against DBSI Housing. In fact, "Idaho recognizes that choses in action are generally assignable," and "[o]nly the assignee may prosecute an action on the chose in action." *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.,* 140 Idaho 121, 126, 90 P.3d 346 (2004). DBSI Housing has assigned all of its interest in the Contract to DBSI Signature Place, including all choses in action or other legal claims arising out of or related to the Contract. *Amended Complaint,* ¶ 9 (Docket No. 18); *Mott Affidavit,* ¶ 4 (Docket No. 33, Att. 2).

The fact that Defendant Sullivan made the representations to DBSI Housing also does not impact the personal jurisdiction inquiry. Both DBSI Signature Place and DBSI Housing are Idaho business entities with their principal place of business in Ada County, Idaho. Both suffered harm in Idaho.[8] Moreover, the time period relevant for the effects test is when the defendant engaged in the alleged tortious conduct. At that time, Sullivan knew that DBSI Housing was an Idaho business entity processing the necessary paperwork in Idaho for the purchase of Signature Place and that DBSI Housing would be harmed if it relied on Sullivan's representations. In short, DBSI Signature Place has alleged facts sufficient to demonstrate that Sullivan knew he was making representations to an Idaho business and that harm could be suffered by that business in Idaho as a result of his representations.

Defendants also place great emphasis on the fact that Sullivan was acting as the agent of Northline in making representations regarding the GOC Lease. *Defendants' Memorandum,* pp. 8, 10 (Docket No. 15, Att. 1). A corporate officer such as Sullivan, however, can be held personally liable if he directed or actively participated in certain tortious activity. *VFP VC v. Dakota Co.,* 141 Idaho 326, 334, 109 P.3d 714 (2005); *see also Eliopulos v. Knox,* 123 Idaho 400, 404–05, 848 P.2d 984 (Ct.App. 1992) (explaining that a corporate director who personally participates in a tort is personally liable to the victim). Additionally, DBSI Signature Place is not requesting that the Court exercise jurisdiction over Sullivan based on the actions of Northline or Greensboro, but rather based on Sullivan's own allegedly tortious con-

---

**8.** One type of harm that Plaintiff alleges that DBSI Housing and DBSI Signature Place suffered is that each relied on Sullivan's representations during the due diligence period when they could have cancelled the Contract. *Amended Complaint,* ¶ 9 (Docket No. 18). The representations were made on August 2, 2004; DBSI Housing Assigned its interest to DBSI Signature Place on August 4, 2004; and the closing on Signature Place occurred on September 30, 2004. *Id. See also id.* at ¶¶ 18, 21, 24 (alleging, among other things, that as a proximate result of the reliance of both DBSI Housing and DBSI Signature Place on Sullivan's representations, they refrained from canceling the Contract and incurred damages of at least $1.2 million).

duct. Thus, the fact that Sullivan is an agent of Northline does not shield him from personal tort liability or from the exercise of personal jurisdiction over him for tortious acts meeting the effects test.[9] *See, e.g., Davis v. Metro Prods., Inc.*, 885 F.2d 515, 521 (9th Cir.1989) (explaining that the defendants' "status as employees does not somehow insulate them from jurisdiction").

Finally, Defendants argue that one telephone call between Sullivan and DBSI Housing is not enough to demonstrate purposeful direction. One contact, however, can be enough, especially when that one contact is the act that forms the basis for the tort allegation. For example, in *Metropolitan Life Insurance Company v. Neaves*, 912 F.2d 1062 (9th Cir.1990), the Ninth Circuit Court of Appeals held that an "Alabama resident could be haled into a California court on the basis of [one] fraudulent letter she sent to an insurance company reporting that she was entitled to an insurance payment actually belonging to a California resident." *Bancroft & Masters*, 223 F.3d at 1087 (describing the holding in *Metropolitan Life*, 912 F.2d 1062). The critical factor in *Metropolitan Life* was "that in sending the letter, the defendant was 'purposefully defrauding [plaintiff] in California.'" *Id.* (quoting *Metropolitan Life*, 912 F.2d at 1065). The critical factor here is that Sullivan intentionally aimed allegedly fraudulent statements/misrepresentations to DBSI Housing in Idaho. *See Brainerd v. Governors of Univ. Of Alberta*, 873 F.2d 1257, 1259–

60 (9th Cir.1989) (holding that an Arizona Court could exercise jurisdiction over a Canadian resident-who made allegedly defamatory statements about a plaintiff he knew resided in Arizona-because the statements were not "untargeted negligence" but rather were performed for the very purpose of having the consequences felt in the forum state).[10]

Simply, Sullivan purposefully directed his actions toward DBSI Housing in Idaho and, but for his actions, Plaintiff would not have suffered the alleged injury. Accordingly, because there is some nexus between the cause of action and Sullivan's activities in Idaho, *Shute*, 897 F.2d at 385, and because of Sullivan's purposeful direction, Plaintiff has satisfied the first two requirements necessary to make a prima facie showing of personal jurisdiction.

■ The final requirement is that the exercise of jurisdiction be reasonable. *See Core–Vent*, 11 F.3d at 1487–88 (listing the seven relevant factors for reasonableness). The seven factors of reasonableness do not overwhelmingly favor either party. For instance, the burdens and convenience of resolving this action in Idaho are equal to those of litigating the action in Texas. However, a plurality of the factors weighs in favor of the exercise of jurisdiction. In particular, Idaho has an interest in protecting its residents/businesses from tortious conduct.

Additionally, Defendants have failed to meet their *compelling* burden to demonstrate that jurisdiction over Sullivan would

---

**9.** This also helps distinguish one principal case relied on by Defendants, *Idaho Potato Comm'n v. Washington Potato Comm'n*, 410 F.Supp. 171 (D.Idaho 1975). In *Idaho Potato Commission*, there was no allegation that any member of the Washington Potato Commission personally committed an intentionally tortious act aimed at the forum state that caused foreseeable harm within that state. Indeed, the court noted that it may have arrived at a different result if the individual

members had acted dishonestly. *Id.* at 182 n. 3.

**10.** This individual targeting is what distinguishes the present action from the case of *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir.1997). In *Cybersell* there was no showing that defendants even knew of plaintiff's existence, let alone targeted the plaintiff in the forum state. *Id.* at 420.

be unreasonable. *See Burger King,* 471 U.S. at 477, 105 S.Ct. 2174. For example, Defendants argue that jurisdiction is unreasonable because Sullivan made the allegedly tortious representations as an agent of the other Defendants. *Defendants' Memorandum,* p. 11 (Docket No. 15, Att. 1). As discussed above, however, Sullivan's status as a corporate officer does not shield him from personal liability for torts he participated in, and it also does not render unreasonable the Court's exercise of jurisdiction based on acts he personally committed. Moreover, Defendants provide argument on only three of the seven factors, and therefore have failed to present "a *compelling* case that the presence of some other consideration would render jurisdiction unreasonable." *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (emphasis in the original); *see also Bancroft & Masters,* 223 F.3d at 1089 (finding the defendant's arguments inadequate to discharge the compelling case requirement where the defendant made no factual showing with regard to the seven factors and did not focus on all seven factors).

Under the circumstances of this case, the Court concludes that Sullivan could reasonably have anticipated being haled into court in Idaho based on his representations to DBSI Housing. For this reason and the reasons discussed above, Plaintiff DBSI Signature Place has made the requisite prima facie showing for this Court to exercise personal jurisdiction over Defendant Sullivan. Accordingly, the Court denies Defendants' Motion to Dismiss.

## IV.

### DEFENDANTS' MOTION TO TRANSFER VENUE

▮▮▮ Defendants request that the Court transfer this case to the U.S. District Court for the Northern District of Texas or to the U.S. District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1404(a). *Motion to Transfer Venue* (Docket No. 16). 28 U.S.C. § 1404(a) states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "[T]here is normally a strong presumption in favor of honoring the plaintiff's choice of forum." *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.,* 61 F.3d 696, 703 (9th Cir.1995). Consequently, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986). "Analysis of suitability for transfer involves private factors, such as the ease of access to proof, costs, availability of compulsory process for unwilling witnesses, and other practical considerations for an efficient and expeditious trial." *Id.* "In addition, it considers public factors such as the local public and jury pool's interest in localized controversies." *Id.*

Initially, because there are no facts indicating that Sullivan, a Texas resident, would be subject to personal jurisdiction in North Carolina, the case cannot be transferred to North Carolina.[11] *See Hoffman v. Blaski,* 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (explaining that where the plaintiff could not have brought an action in the proposed venue, the court is without power to transfer the action). Thus, Texas is the only alternate venue. Adjudicating this matter in Texas, however, would be no less convenient than in Idaho. The witnesses in this case include Idaho residents, and others in both Texas

---

11. Defendants agree. *See Defendants' Memorandum,* p. 3 (Docket No. 16) (stating "it would offend due process to subject Sullivan to jurisdiction in North Carolina").

and North Carolina. *Defendants' Memorandum,* p. 7 (Docket No. 16). Moreover, Defendants have provided little to no analysis of the private and public factors as they relate to Texas. Instead, Defendants focused their arguments on how North Carolina is a more appropriate forum than Idaho. *See id.* at pp. 7–8; *Defendants' Reply Memorandum,* pp. 17–18 (Docket No. 29).

Simply, North Carolina is not an appropriate alternate venue and Defendants have not made a strong showing of inconvenience or otherwise met their burden to require a transfer of venue to Texas. Venue is proper in Idaho, and Defendants' Motion to Transfer Venue is denied.

## V.

### ORDER

Accordingly, IT IS HEREBY ORDERED:

1. Plaintiff's Motion For Leave to File First Amended Complaint (Docket No. 17) is GRANTED. Plaintiff shall serve and file its Amended Complaint within fourteen (14) days.

2. Third–Party Plaintiff's Motion to Amend Third–Party Complaint (Docket No. 27) is GRANTED. Third–Party Plaintiff shall serve and file its Amended Third–Party Complaint within fourteen (14) days.

3. Defendants' Motion to Dismiss Mark J. Sullivan for lack of personal jurisdiction (Docket No. 15) is DENIED.

4. Defendants' Motion to Transfer Venue (Docket No. 16) is DENIED.

5. Plaintiff's Motion for Leave to File (i) Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss Mark J. Sullivan, and (ii) Affidavit of Walt Mott (Docket No. 32) is GRANTED.

6. Defendants' Motion to Strike Portions of Affidavit of Walt Mott (Docket No. 35) is GRANTED.