**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RANGE ROAD MUSIC, INC.;
SONY/ATV HARMONY; WILLIAMSON
MUSIC COMPANY; DANIEL
KURAMOTO, DBA Little Tiger
Music; KIMO CORNWELL, DBA
Omik Music; TERI KOIDE, DBA
Skhamalee Music; UNIVERSAL
MUSIC CORPORATION,
        *Plaintiffs-counter-defendants-*
                  *Appellees,*

        v.

EAST COAST FOODS, INC.; HERBERT
HUDSON,
        *Defendants-counter-claimants-*
                  *Appellants.*

No. 10-55691

D.C. No.
2:09-cv-02059-CAS-
AGR

Range Road Music, Inc.;
Sony/ATV Harmony; Williamson
Music Company; Daniel
Kuramoto, DBA Little Tiger
Music; Kimo Cornwell, DBA
Omik Music; Teri Koide, DBA
Skhamalee Music; Universal
Music Corporation,
     *Plaintiffs-counter-defendants-*
*Appellees,*

v.

East Coast Foods, Inc.; Herbert
Hudson,
     *Defendants-counter-claimants-*
*Appellants.*

No. 10-55800

D.C. No.
2:09-cv-02059-CAS-
AGR

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
December 9, 2011—Pasadena, California

Filed February 16, 2012

Before: Harry Pregerson and Richard A. Paez,
Circuit Judges, and James P. Jones, District Judge.*

Opinion by Judge Paez

---

*The Honorable James P. Jones, United States District Judge for the
Western District of Virginia, sitting by designation.

## COUNSEL

Sharon Douglass Mayo, Arnold & Porter LLP, San Francisco, California; Emilia P. Petersen and Danika B. Vittitoe, Arnold & Porter LLP, Los Angeles, California; Richard H. Reimer, American Society of Composers, Authors, and Publishers, New York, New York; and Vikram Sohal, Miller LLP, Los Angeles, California, for the plaintiffs-counter-defendants-appellees.

Aaron T. Borrowman, Michael Anthony DiNardo, and John E. Kelly, Kelly, Lowry & Kelley, LLP, Woodland Hills, California, for the defendants-counter-claimants-appellants.

## OPINION

PAEZ, Circuit Judge:

East Coast Foods, Inc. (East Coast) and Herbert Hudson appeal the district court's grant of summary judgment to Plaintiffs-Appellees (collectively, the "Music Companies") for eight counts of copyright infringement, as well as the district court's award of attorney's fees and costs to the Music Companies. We affirm.

### I.  Background

The Music Companies own the copyrights to the eight songs at issue in this appeal, and are members of the Ameri-

can Society of Composers, Authors, and Publishers (ASCAP). ASCAP is a "performing rights society," a nonprofit organization that licenses the music of its members and collects royalties whenever that music is performed publicly. *See Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 4-5 (1979).

East Coast owns and operates the Roscoe's House of Chicken and Waffles chain of restaurants in Southern California. There are five Roscoe's restaurants, located in Pasadena, Hollywood, Los Angeles, West Los Angeles, and Long Beach. The co-defendant, Herbert Hudson, is the sole officer and director of East Coast.

The Long Beach Roscoe's opened in 2001. Attached to the restaurant is a bar and lounge area called the "Sea Bird Jazz Lounge." Though the parties dispute whether East Coast owns the Long Beach Roscoe's, as it does the other locations, Hudson submitted a signed liquor license application for the Long Beach Roscoe's to the California Department of Alcoholic Beverage Control in 2001, which named the applicant as "East Coast Foods Inc." A liquor license was ultimately issued to East Coast Foods Inc., doing business as Roscoe's House of Chicken and Waffles, which today appears in the window of the Sea Bird Jazz Lounge.[1]

Shortly after the Long Beach Roscoe's opened, ASCAP contacted East Coast to offer it a license to perform music by ASCAP members at the restaurant and lounge. East Coast did not purchase a license, and between 2001 and 2007 East Coast ignored repeated requests from ASCAP to pay licensing fees. In 2008, ASCAP engaged an independent investigator, Scott Greene, to visit the Long Beach Roscoe's, make notes of his visit, and prepare a detailed investigative report indicating whether copyright infringement was occurring at the

---

[1]Both the lounge and the restaurant serve alcohol; the single liquor license covers both sections of the building.

venue. Greene, who considers himself knowledgeable about every genre of music "except heavy metal and explicit rap," had conducted over 300 investigations for ASCAP when he was retained for the Roscoe's job.

Greene visited Roscoe's on May 30, 2008. During his visit, he surreptitiously noted the musical compositions performed by that night's live musical act, Azar Lawrence & the L.A. Legends, as well as songs played from a CD over the lounge's sound system. During the live performance, he was able to personally identify the jazz compositions "All or Nothing at All," "It's Easy To Remember," "My Favorite Things," and "Be-Bop," all popularly associated with John Coltrane. In several cases, the band leader announced the titles of the songs before playing them. Greene also identified four songs by the jazz-fusion group Hiroshima that played on the venue's CD player: "Bop-Hop," "Once Before I Sleep," "One Fine Day," and "Only Love." He did not personally recognize the Hiroshima songs, but he approached the CD player and transcribed the titles directly from the CD jewel case as the songs played.

After Greene submitted his investigative report, ASCAP confirmed that the Music Companies own validly registered copyrights to all eight of the songs Greene identified. The Music Companies sued East Coast and Hudson for eight counts of copyright infringement, corresponding to the eight songs Greene heard publicly performed at the Long Beach Roscoe's. The complaint also alleged that East Coast owned and operated the Long Beach Roscoe's, and that Herbert Hudson was the president and principal stockholder of East Coast.

East Coast and Hudson counterclaimed for a declaratory judgment that they had not committed copyright infringement. After discovery, the parties cross-moved for summary judgment. The district court granted the Music Companies' motion for summary judgment and awarded $4,500 in statutory damages against East Coast and Hudson, jointly and sev-

erally, for each of the eight infringed works, for a total of $36,000. In a subsequent order, the district court awarded $162,728.22 against the defendants for attorney's fees and costs. East Coast and Hudson now appeal both the grant of summary judgment and the fee award.

## II.    Standard of Review

We review the district court's grant of summary judgment de novo. *See Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir. 2007). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party, no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Nunez v. Duncan*, 591 F. 3d 1217, 1222-23 (9th Cir. 2010). A "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence" is insufficient to create a genuine issue of material fact. *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

The district court's evidentiary rulings are reviewed for abuse of discretion. *See Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1057-58 (9th Cir. 2008). The district court's award of attorney's fees is also reviewed for abuse of discretion. *See Gates v. Deukmejian*, 987 F.2d 1392, 1396 (9th Cir. 1993).

## III.    Discussion

### A.    The Music Companies' complaint.

East Coast and Hudson first argue that the Music Companies' complaint was insufficient because it did not state a claim of vicarious liability for copyright infringement. *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 995 (9th Cir. 2009) (refusing to entertain a theory of secondary

liability for copyright infringement when it was not alleged in either the plaintiff's original or amended complaint).

**[1]** The Music Companies' complaint was sufficient. A vicarious infringer "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005); *see also Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975) ("An orchestra or individual instrumentalist or singer who performs a copyrighted musical composition in such a public place without a license is thus clearly an infringer under the [Copyright Act]. The entrepreneur who sponsors such a public performance for profit is also an infringer—direct or contributory."). The Music Companies' complaint contained an adequate statement of the claim of vicarious infringement: it alleged that copyrighted musical compositions were publicly performed at the Long Beach Roscoe's, and pleaded specific facts to raise a plausible inference that East Coast and Hudson exercised control over and financially benefitted from the performance venue. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1951-52 (2009).

## B. The sufficiency of the Music Companies' evidence of infringement.

The Music Companies' evidence of copyright infringement consisted primarily of Scott Greene's investigative report and deposition testimony. East Coast and Hudson argue that the district court erred in granting summary judgment to the Music Companies for two reasons: first, because Greene's identification of copyrighted compositions performed at the Long Beach Roscoe's was expert testimony by a lay witness that should have been excluded from evidence; and second, because the Music Companies failed to prove "substantial similarity" between the publicly performed compositions and the copyrighted works.

**[2]** The district court did not abuse its discretion by relying on Greene's report and declaration. Green's report and decla-

ration contained his competent percipient witness testimony as a visitor to the Long Beach Roscoe's. Fed. R. Evid. 701. Identifying popular songs does not require "scientific, technical, or other specialized knowledge." Fed. R. Evid. 702. On the contrary, identifying music is a reflexive daily process for millions of radio listeners, amateur karaoke singers, and fans of *Name That Tune* reruns. *See* Fed. R. Evid. 701 advisory committee's note ("[T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field.") (quotation marks and citations omitted). Moreover, many of Greene's identifications did not even require him to tax his memory: the live band announced the titles of several of the compositions they covered, and Greene transcribed other titles directly from a CD jewel case. Clearly, the district court correctly determined that Greene's evidence was admissible.

East Coast and Hudson next argue that the Music Companies' evidence of copyright infringement was inadequate because neither Greene nor any other witness proved "substantial similarity" between the compositions performed at Roscoe's and the copyrighted works.

**[3]** To establish a prima facie case of copyright infringement, a plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). "The word 'copying' is shorthand for the infringing of any of the copyright owner's [six] exclusive rights," one of which is the right "to perform the copyrighted work publicly." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989); *see also* 17 U.S.C. § 106(4) (reserving to owners of copyrights in musical works the exclusive right "to perform the copyrighted work publicly").

**[4]** "Substantial similarity" is not an element of a claim of copyright infringement. Rather, it is a doctrine that helps courts adjudicate whether copying of the "constituent elements of the work that are original" actually occurred when an allegedly infringing work appropriates elements of an original without reproducing it *in toto*. *See Funky Films*, 462 F.3d at 1076. A showing of "substantial similarity" is irrelevant in a case like this one, in which the Music Companies produced evidence that the public performances[2] entailed direct copying of copyrighted works. *See id.* (noting that a demonstration of substantial similarity is only necessary to prove infringement "[a]bsent evidence of direct copying"); *see also Narell v. Freeman*, 872 F.2d 907, 910 (9th Cir. 1989) (noting that "[a] finding that a defendant copied a plaintiff's work, without application of a substantial similarity analysis" will be made "when the defendant has engaged in virtual duplication of a plaintiff's entire work"); 2 Howard B. Abrams, The Law of Copyright § 14:10 (2011) ("Direct proof [of copying] can consist of . . . testimony of direct observation of the infringing act . . . .").

**[5]** "Substantial similarity" is thus a red herring: the proper question is whether infringing performances occurred *vel non*. And on that question, East Coast and Hudson cannot raise a genuine issue of material fact. Greene's declaration, detailed investigative report, and deposition testimony were sufficient to establish that the works were publicly performed. He declared that the live band he saw perform at the Long Beach Roscoe's introduced the songs they were playing as Coltrane standards and proceeded to play them. He further declared that he saw a disc jockey play four tracks from a CD of Hiroshima songs, the titles of which he obtained from the jewel

---

[2] Both the tracks played from the compact disc player and the compositions played by the live band were "performed" as that term is used in the Copyright Act. "To 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process." 17 U.S.C. § 101.

case lying next to the CD player. All of this evidence was completely uncontradicted by East Coast and Hudson, who proffered no evidence tending to contradict Greene's testimony that the eight copyrighted compositions at issue were publicly performed at the Long Beach Roscoe's on the night he visited the venue.

**[6]** The district court was correct to conclude that Greene's uncontested declaration was sufficient to establish that no genuine issue of material fact existed as to whether copyright infringement occurred at the Long Beach Roscoe's.

### C. East Coast's and Hudson's liability for the infringement.

Having determined that there is no genuine dispute that copyright infringement occurred at the Long Beach Roscoe's, we next turn to the question of whether East Coast and Hudson can be held liable for vicarious infringement. East Coast and Hudson aver that the Long Beach Roscoe's—as well as the attached Sea Bird Jazz Lounge, where the infringing performances actually occurred—are owned by an independent corporate entity called Shoreline Foods. East Coast and Hudson insist that Shoreline was the proper defendant in this action.

**[7]** To impose vicarious liability on a defendant for copyright infringement, "a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 729 (9th Cir. 2007). A defendant "exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Id.* at 730.

**[8]** We agree with the district court that East Coast and Hudson are jointly and severally liable for the infringement.

Overwhelming evidence showed that East Coast and Hudson exercised control over both the Long Beach Roscoe's and the Sea Bird Jazz Lounge, and derived a financial benefit from the musical performances in the lounge. The Sea Bird Jazz Lounge displays on its premises a liquor license owned by East Coast and signed by Hudson. Hudson, who is the president of both East Coast and Shoreline, testified that he has managerial authority over the Long Beach Roscoe's, including the power to hire and fire employees and the power to prevent acts from appearing at the Sea Bird Jazz Lounge. The manager of the Long Beach Roscoe's, Cuahtemoc Rodriguez, testified that his paychecks were issued by East Coast Foods and that he bought alcohol for both the restaurant and the lounge area. By contrast, the only evidence that East Coast and Hudson proffer to demonstrate that they are not proper defendants is Hudson's unsubstantiated and self-serving declaration that he has never owned the Long Beach Roscoe's.

**[9]** Because no genuine issue of material fact exists as to whether East Coast and Hudson controlled and derived financial benefit from the infringing performances at the Sea Bird Jazz Lounge, the district court properly held that Hudson and East Coast were liable for copyright infringement.

## D.  Attorney's fees.

The final issue on appeal is whether the district court's award of attorney's fees and costs to the Music Companies was an abuse of discretion.

**[10]** The Copyright Act empowers courts to "award a reasonable attorney's fee to the prevailing party as part of the costs" in infringement cases. 17 U.S.C. § 505. In awarding such fees, "district courts are given wide latitude to exercise 'equitable discretion.' " *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997).

**[11]** The district court applied the factors set forth in *Entertainment Research Group*, thoroughly considered both

parties' arguments, and articulated a reasoned explanation for its fee award. East Coast and Hudson could have avoided liability by purchasing a valid license at any point during the seven years in which ASCAP importuned them to do so. Moreover, much of the fees and costs were occasioned by East Coast's and Hudson's obfuscation of the corporate structure of Roscoe's. The district court did not abuse its discretion in awarding fees and costs to the Music Companies.

AFFIRMED.