**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

WASHINGTON SHOE COMPANY, a
Washington corporation,
*Plaintiff-Appellant/*
*Cross-Appellee*,

v.

A-Z SPORTING GOODS INC., an
Arkansas corporation, DBA A-2-Z
Wholesale.com,
*Defendant-Appellee/*
*Cross-Appellant*.

</td><td>

Nos. 11-35166
and 11-35206

D.C. No.
2:09-cv-01042-
RSL

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted
May 11, 2012—Seattle, Washington

Filed December 17, 2012

Before: Michael Daly Hawkins, Jay S. Bybee,
and Carlos T. Bea, Circuit Judges.

Opinion by Judge Bybee

## SUMMARY[*]

### Copyright / Personal Jurisdiction

The panel reversed the dismissal of a copyright infringement action for lack of personal jurisdiction.

Applying the State of Washington's long-arm statute, which extends jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause, the panel held that an Arkansas retailer was subject to personal jurisdiction in Washington even though its only relevant contact with the state was a claim that it willfully violated a copyright held by a Washington corporation.  The panel held that the plaintiff made a prima facie showing that the Arkansas retailer purposefully directed its activities at the forum state because it engaged in intentional acts expressly aimed at Washington, causing harm that it knew was likely to be suffered in that state.  The panel concluded that the retailer's alleged infringement of the plaintiff's copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder, was sufficient "individual targeting" to satisfy the "express aiming" requirement.

## COUNSEL

John W. Widell, Santa Fe, New Mexico; Timothy B. McCormack, Seattle, Washington, for Appellant–Cross-Appellee.

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Roger M. Townsend, Breskin, Johnson & Townsend PLLC, Seattle, Washington, for Appellee–Cross-Appellant.

**OPINION**

BYBEE, Circuit Judge:

In this copyright infringement action, we address whether an Arkansas retailer is subject to personal jurisdiction in Washington when its only relevant contact with the state is a claim that it willfully violated a copyright held by a Washington corporation. The district court for the Western District of Washington dismissed Washington Shoe Company's ("Washington Shoe") action against A-Z Sporting Goods, Inc. ("A-Z") for lack of personal jurisdiction. We reverse.

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff-appellant Washington Shoe is a Washington corporation that has done business in the state of Washington for over 100 years. Washington Shoe, as its name suggests, manufactures a variety of foot apparel for men, women, and children. Defendant-appellee A-Z is an Arkansas corporation that operates a single retail store in Alma, Arkansas, where it sells goods related to hunting, fishing, and outdoor activities. According to A-Z, it does not sell products over the Internet and does not have an interactive website that allows customers to order its products, although a different A-Z entity, with some common management, does sell some products over eBay.

Between 2007 and 2009, A-Z purchased a number of items from Washington Shoe. Washington Shoe salesman Jesse James regularly visited the A-Z store in Arkansas to determine what additional orders A-Z needed. James provided A-Z with brochures and catalogs containing Washington Shoe products and copyright notifications.

During one of his visits to A-Z, James noticed that "Ditsy Dots" and "Spider" boots—two of Washington Shoe's popular children's rain boots—were on display. James knew that A-Z had never purchased these particular styles from him. James purchased a pair of the suspicious boots and sent them to Washington Shoe, who confirmed that they were infringing copies. A-Z admits that the boots in dispute were purchased from China and not from Washington Shoe, but claims that the boots had no name on them or other indication that they were subject to copyright.

On April 17, 2009, Washington Shoe's counsel in Seattle sent A-Z a cease-and-desist letter notifying A-Z that its boot designs were copyrighted and that A-Z's "infringing boots are clearly illegal knock-offs." He demanded that all sales of the infringing boots stop and asked for an accounting of past sales. On May 6, 2009, counsel sent a follow-up letter, again warning A-Z that it was violating Washington Shoe's copyright and might be liable for actual and statutory damages. He requested written assurance that A-Z had ceased importing or selling the infringing rain boots. After receiving these letters, A-Z removed the offending boots from its store, but sold its remaining inventory to a thrift store, whose representative traveled to Arkansas to purchase the boots.

Washington Shoe filed a complaint in the U.S. District Court for the Western District of Washington, alleging copyright infringement, trade dress infringement, and unfair competition.  A-Z moved to dismiss for lack of personal jurisdiction or, in the alternative, on forum non conveniens grounds.  After initial briefing, the district court allowed jurisdictional discovery to test A-Z's claim that it "has never sold any goods, of any kind, to any person, business or entity in the State of Washington."  The court initially denied A-Z's motion to dismiss, relying on our decision in *Brayton Purcell LLP v. Recordon & Recordon* ("*Brayton Purcell I*"), 575 F.3d 981 (9th Cir. 2009).  That decision was withdrawn and superceded by *Brayton Purcell LLP v. Recordon & Recordon* ("*Brayton Purcell II*"), 606 F.3d 1124 (9th Cir. 2010), prompting the district court to issue an order to show cause, and eventually to grant A-Z's motion to dismiss. Because of the confusion generated by the different *Brayton Purcell* opinions, the district court denied A-Z's request for attorneys' fees under Washington Revised Code § 4.28.185(5). Washington Shoe appeals the dismissal, and A-Z cross-appeals the denial of attorneys' fees.

## II.  DISCUSSION

### A.  Standard of Review

A district court's determination of whether personal jurisdiction may be properly exercised is a question of law that we review de novo. *See Brayton Purcell II*, 606 F.3d at 1127.  Although the burden is on the plaintiff to show that the court has jurisdiction over the defendant, in the absence of an evidentiary hearing, the plaintiff need only make a "prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

1154 (9th Cir. 2006) (internal quotation marks omitted). Additionally, the court resolves all disputed facts in favor of the plaintiff, in this case, Washington Shoe. *See id.*

Because there is no applicable federal statute governing personal jurisdiction in this case, we apply the law of the state of Washington. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See* Wash. Rev. Code § 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989). The relevant question, therefore, is whether the requirements of due process are satisfied by the exercise of personal jurisdiction over A-Z in Washington.

## B.  Due Process

Due process requires that to exercise jurisdiction over a non-resident defendant, the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). We employ a three-part test to determine if a defendant has sufficient minimum contacts to be subject to specific personal jurisdiction[1]:

> (1)   The   non-resident   defendant   must purposefully   direct   his   activities   or consummate some transaction with the forum

---

[1] There is no basis for asserting general jurisdiction over A-Z in Washington.

or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Brayton Purcell II*, 606 F.3d at 1128 (quoting *Schwarzenegger*, 374 F.3d at 802) (internal quotation marks omitted). As Washington Shoe bears the burden of establishing the district court's jurisdiction over A-Z, it must satisfy the first two prongs. If it does so, then A-Z must come forward with a "'compelling case' that the exercise of jurisdiction would not be reasonable." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

Only the first prong is at issue in this case. The plaintiff may satisfy this prong by demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum, or purposefully directed its activities at the forum. We have explained that although we have sometimes used these two terms in shorthand fashion as a single concept, they "are, in fact, two distinct concepts." *Schwarzenegger*, 374 F.3d at 802. We have further explained that "[a] purposeful availment analysis is most often used in

suits sounding in contract." *Id.*; *see also Burger King*, 471 U.S. at 473, 475–76; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). By contrast, "[i]n tort cases, we typically inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc).[2]

The "purposeful direction" or "effects" test is based on *Calder v. Jones*, 465 U.S. 783 (1984). It "requires that the defendant . . . have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo*, 647 F.3d at 1228 (internal quotation marks omitted). Thus, courts may exercise personal jurisdiction over a defendant who engages in an intentional act that causes

---

[2] A plurality of the Supreme Court recently questioned whether our rough division between contract and tort is sound, and applied "a purposeful *avoilment* (rather than a purposeful *direction*) analysis," *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011), in a products liability case. *See J. McIntyre Mach., Ltd. v. Nicastro*, — U.S. —, 131 S. Ct. 2780, 2785 (2011) (plurality opinion). Nevertheless, we recently found *J. McIntyre* "consistent with the line of cases finding specific jurisdiction when there has been purposeful direction." *CollegeSource*, 653 F.3d at 1077.

In any event, for our purposes, there is no reason to question the continuing validity of the two lines of analysis for contract and tort cases, because the plurality in *J. McIntyre* questioned whether the "purposefully avails" test was appropriate "in cases involving an intentional tort." 131 S. Ct. at 2785; *see also id.* at 2787 (acknowledging that the "purposefully avails" test from *Hanson* might not address adequately "some cases, as with an intentional tort").

harm in the forum state, even if that act takes place outside of the forum state. *See Yahoo! Inc.*, 433 F.3d at 1206; *Panavision*, 141 F.3d at 1320 ("It is not required that a defendant be physically present or have physical contacts with the forum, so long as his efforts are 'purposefully directed' toward forum residents.").

We are going to consider each of these elements in turn. Our discussion, however, is limited to Washington Shoe's willful infringement claim, because that is its strongest basis for the exercise of jurisdiction in Washington. If Washington has jurisdiction over this claim, it may exercise jurisdiction over the remaining claims, which are related. *See Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (adopting the doctrine of pendent personal jurisdiction, which allows a court to exercise "jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction"); *see also* 28 U.S.C. § 1367(a) (providing district courts with supplemental subject matter jurisdiction for claims so related that they "form part of the same case or controversy").

## 1.  Intentional Act

First, we address whether A-Z "committed an intentional act" when it, allegedly, willfully infringed Washington Shoe's copyright. *See Brayton Purcell II*, 606 F.3d at 1128. Although the issue is not a difficult one in this case, we wish to be careful not to confuse the "intentional act" prong of the *Calder* test with the allegation that A-Z acted willfully. "'Intentional act' has a specialized meaning in the context of

the *Calder* effects test." *Schwarzenegger*, 374 F.3d at 806. We have defined an "act" as "denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended." *Id.* ("Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger and not the impingement of the bullet upon the other's person." (quoting Restatement (Second) of Torts § 2 & cmt. c (1964))). Further, "[w]e construe 'intent' . . . as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Id.* Accordingly, an intentional act is an external manifestation of the actor's intent to perform an actual, physical act in the real world, not including any of its actual or intended results.

According to Washington Shoe's allegations, A-Z purchased the boots at issue from China and the infringing boots were sold in the same Arkansas store as Washington Shoe's footwear. Subsequently, after receiving notice of the alleged copyright infringement through cease-and-desist letters, A-Z sold the infringing boots to a thrift store. We have little difficulty finding that by intentionally engaging in the actual, physical acts of purchasing and selling the allegedly infringing boots, A-Z has clearly committed an "intentional act" within the meaning of the *Calder* test.

## 2. Expressly Aimed

Determining whether A-Z's conduct was expressly aimed at the state of Washington is a more difficult question that, in this case, depends to a great degree on the allegations of a willful copyright violation. "To establish a prima facie case of copyright infringement, a plaintiff must demonstrate

(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Rd. Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1153 (9th Cir. 2012) (internal quotation marks omitted). The Copyright Act provides an additional damage remedy if the plaintiff can show that the violation was willful. *See* 17 U.S.C. § 504(c)(2). We have explained that "a finding of 'willfulness' in [the copyright] context can be based on either 'intentional' behavior, or merely 'reckless' behavior," *Barboza v. New Form, Inc.* (*In re Barboza*), 545 F.3d 702, 707 (9th Cir. 2008), and that "'[t]o prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights,'" *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (quoting *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005)); *see also Arclightz & Films Pvt. Ltd v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361–62 (S.D.N.Y. 2003) ("To prove willfulness, plaintiffs must show that the infringer had actual or constructive knowledge that it was infringing the plaintiffs' copyrights or else acted in reckless disregard of the high probability that it was infringing plaintiffs' copyrights."). "[E]vidence that notice had been accorded to the alleged infringer . . . is perhaps the most persuasive evidence of willfulness." *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1227 (7th Cir. 1991) (quotation marks omitted). We have characterized copyright infringement as a "tort," *Brayton Purcell II*, 606 F.3d at 1128, and suggested that willful infringement is an intentional tort, *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997), *rev'd on*

*other grounds sub nom. Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

According to Washington Shoe's allegations, there was an ongoing relationship between A-Z and Washington Shoe, during which A-Z received catalogs or brochures that included rain boots, allegedly including the copyrighted boots in this case, thus making A-Z aware of both the existence of the Ditsy Dot and Spider boots and Washington Shoe's copyright.  Washington Shoe further alleged that A-Z purchased the boots at issue from China, and that the infringing boots were sold in the same Arkansas store as Washington Shoe's footwear, thus placing the infringing items in direct competition with Washington Shoe's copyrighted boots. Once Washington Shoe discovered that A-Z was selling infringing boots, it advised A-Z of the copyright infringement through cease-and-desist letters and requested proof that A-Z was no longer violating its copyright.  After receiving the letters, A-Z sold the infringing boots to a thrift store.  These facts, if sustained, likely constitute a willful violation of Washington Shoe's copyright based upon A-Z's actual awareness of its infringing activity.

We have held that *Calder* "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  We noted that our previous cases said that there must be "something more," *see Panavision*, 141 F.3d at 1321, and we held that that "'something more' is what the Supreme Court described as 'express aiming' at the forum state." *Bancroft & Masters*, 223 F.3d at 1087.  We have repeatedly stated that the "express aiming" requirement is satisfied, and specific jurisdiction exists, "when 'the

defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (quoting *Bancroft & Masters*, 223 F.3d at 1087); *see also Bancroft & Masters*, 223 F.3d at 1087 ("'[E]xpress aiming' encompasses wrongful conduct individually targeting a known forum resident.").

We have observed that "[t]he 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger*, 374 F.3d at 807. *Calder*, we explained, was not a case of "'untargeted negligence,'" *id.* (quoting *Calder*, 465 U.S. at 789), but was "intentional behavior directed at Jones in California," *id.* Even though directed entirely within Florida, the intentional acts in *Calder*—the writing and editing of an allegedly libelous article—were "expressly aimed" at California because the petitioners "*knew* [the article] would have a potentially devastating impact upon respondent" who they knew lived and worked in California. *See Calder*, 465 U.S. at 789–90 (emphasis added). Thus, the respective directions of the intentional act and the known impact need not coincide for the "express aiming" requirement to be satisfied. Particularly in the case of a willful copyright infringement, the intentional act constituting the violation may occur solely within one state while the *known* impact of that copyright infringement is directed at another state.

We have been more clear—and found jurisdiction in the plaintiff's home forum—when we have determined that the tort is an intentional one, because in such cases the "acts are performed for the very purpose of having their consequences felt in the forum state." *Brainerd v. Governors of the Univ. of Alta.*, 873 F.2d 1257, 1260 (9th Cir. 1989); *see also*

*Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008) ("[S]tates have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents."). So, for example, in *Columbia Pictures*, Columbia alleged that Feltner, the owner of television stations in the southeast that continued to broadcast Columbia-licensed shows after failing to pay royalties, "willfully infringed copyrights owned by Columbia, which, as Feltner knew, had its principal place of business in the Central District [of California]." *Columbia Pictures*, 106 F.3d at 289. Thus, even though the intentional act of broadcasting the Columbia-licensed shows was directed at the southeastern United States, the impact of that intentional act was "expressly aimed" at the Central District of California because Feltner *knew* the impact of his willful violation would be felt there. We held that "[t]his fact alone is sufficient to satisfy the 'purposeful availment' requirement." *Id.* (citing *Calder*, 465 U.S. at 789–90).

More recently, in *Brayton Purcell II*, we considered the claim brought by Brayton Purcell, a Northern California law firm, that Recordon, a Southern California law firm, plagiarized Brayton Purcell's copyrighted website and was thus subject to suit in the Northern District of California for willful copyright infringement.[3] *Brayton Purcell II*, 606 F.3d at 1127. We found that "Recordon allegedly placed the two law firms in competition in the area of elder abuse law and created confusion among potential clients as to the true authorship of the elder abuse material. This individualized

---

[3] Although the issue in *Brayton Purcell II* was proper venue, the decision rested on a determination of personal jurisdiction in the district. *See Brayton Purcell II*, 606 F.3d at 1128; *Columbia Pictures*, 106 F.3d at 289.

targeting distinguishes the instant case from [a case in which jurisdiction was not proper]." *Brayton Purcell II*, 606 F.3d at 1130.  We further found that "Recordon's conduct was intentional, wrongful, and aimed at Brayton"; that "Recordon's actions placed it in direct competition with Brayton in Northern California"; and that "[a]nyone in Northern California searching for a law firm specializing in elder abuse would have been confused when choosing between Brayton Purcell's and Recordon's web sites." *Id.* at 1130–31.  We concluded that "[t]he express aiming prong is therefore satisfied." *Id.* at 1131.

In *Mavrix Photo*, we addressed another case involving intentional copyright infringement.  647 F.3d 1218.  Mavrix, a celebrity photo agency, was a Florida corporation operating in Miami; it also had a Los Angeles office.  *Id.* at 1221–22.  Brand, an Ohio corporation out of Toledo, operated a celebrity gossip website.  *Id.* at 1222.  Mavrix alleged that Brand had posted Mavrix's copyrighted photos on its website.  *Id.* at 1221.  The question in *Mavrix Photo* was whether Brand was subject to personal jurisdiction in California, even though neither party was headquartered there.  *Id.* at 1221–22.  Regarding the "expressly aimed" requirement, we focused on "[t]he fact that the advertisements targeted California residents [as] indicat[ing] that Brand kn[ew]—either actually or constructively—about its California user base, and that it exploit[ed] that base for commercial gain by selling space on its website for advertisements."  *Id.* at 1230.  Further, we concluded that "Brand anticipated, desired, and achieved a substantial California viewer base."  *Id.*  Thus, personal jurisdiction in California was warranted where the facts established that Brand had engaged in the intentional act of posting the copyrighted photos on its website outside of California with the knowledge that the impact—direct

competition in the California market—would be felt by Mavrix in California.[4]  We were careful to distinguish this from other instances where "a local newspaper, an individual, or an unpaid blogger" commits an intentional act by posting copyrighted material on a website lacking the *knowledge* that it would impact users outside of the known or anticipated physical area of influence.  *Id.* at 1231.  "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."  *Id.*  As was the case in *Mavrix*, however, where a defendant *knows*—as opposed to being able to foresee—that an intentional act will impact another state, the "expressly aimed" requirement is satisfied.  *See also Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1105–08 (C.D. Cal. 2007) (finding jurisdiction proper when California corporation alleged that New York and Maryland entities willfully infringed its copyright and design patents, even though defendants had no connection to California besides knowing that corporation was located in California).

Knowledge that an intentional act will have an impact in another state also distinguishes our decisions in *Schwarzenegger* and *Pebble Beach*.  In *Schwarzenegger* we addressed a case alleging "state law causes of action arising out of the unauthorized use of [Schwarzenegger's] image . . . ."  374 F.3d at 800.  Fred Martin, an automobile dealership located in Ohio, ran a full-page color

---

[4] Notably, our opinion assured, in response to argument Brand made at oral argument, that Mavrix could have sued Brand "in Ohio *or Florida*," Florida being Mavrix's home office.  647 F.3d at 1231 (emphasis added).  *See id.* at 1230 ("It was foreseeable that [Mavrix's] economic loss would be inflicted *not only in Florida, Mavrix's principal place of business*, but also in California.") (emphasis added).

advertisement in a local newspaper including a "small, but clearly recognizable photograph of Schwarzenegger as the Terminator." *Id.* at 799. The photograph included a "bubble quotation" stating, "Arnold says: 'Terminate EARLY at Fred Martin!'" *Id.* The advertisement was meant to encourage customers to "close out their current leases before the expected termination date, and to buy or lease a new car from Fred Martin." *Id.* We recognized that the intentional act was placing the ad, incorporating Schwarzenegger's photograph, in the newspaper. *Id.* at 807. We found, however, that the advertisement circulated in the local Ohio-based newspaper "was never circulated in California, and Fred Martin had no reason to believe that any Californians would see it and pay a visit to the dealership." *Id.* Even though "[i]t may be true that Fred Martin's intentional act eventually caused harm to Schwarzenegger in California, and Fred Martin may have known that Schwarzenegger lived in California," *id.*, the facts did not establish that Fred Martin *knew* that the impact of his intentional act would be felt in California.

*Pebble Beach* was a case involving allegations of intentional infringement and dilution of a trademark. 453 F.3d at 1154. Caddy, a dual citizen of the United States and United Kingdom, ran a bed and breakfast, restaurant, and bar called "Pebble Beach" in southern England. *Id.* at 1153. Caddy maintained a non-interactive website containing general information about his operation. *Id.* Furthermore, besides a brief stint working at a restaurant in Carmel, California, Caddy had always been domiciled in the United Kingdom. *Id.* at 1154. Undoubtedly, Caddy committed an intentional act by maintaining a website using the name "Pebble Beach." As in *Schwarzenegger*, however, *Pebble Beach* did not present any facts establishing knowledge that there would be an impact in California—even though *Pebble*

*Beach* did involve allegations of intentional infringement and dilution of a trademark. *Id.* at 1158.  We found that the "only acts identified by Pebble Beach as being directed at California are the website and the use of the name 'Pebble Beach' in the domain name." *Id.* at 1156.  While it may have been foreseeable that Caddy's intentional act would have an impact in California, we require "something more" than a possible foreseeable effect. *Id.* at 1156–58.  Since Pebble Beach provided no facts suggesting that Caddy *knew* his intentional act would have an impact in California, personal jurisdiction was not proper. *Id.* ("Here, Caddy has hatched no such plan [to obtain money or engage in competition] directed at Pebble Beach.").

Because the harm caused by an infringement of the copyright laws must be felt at least at the place where the copyright is held, we think that the impact of a *willful* infringement is necessarily directed there as well.  Under the Copyright Act, 17 U.S.C. § 101 *et seq.*, "the owner of copyright . . . has the exclusive rights" to display, reproduce, or distribute copies of the copyrighted work, and to prepare derivative works. *Id.* § 106.  "The copyright is the right to control the work, including the decision to make the work available to or withhold it from the public." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).  When copyrights are held by corporations, the "right to control the work" will typically be exercised where the corporation is located.  The impact of an intentional violation of that right is necessarily directed at that location.

Here, the question is whether an intentional infringement of Washington Shoe's copyright in its shoes is expressly aimed at the state of Washington, where Washington Shoe has it headquarters and from which it controls its exclusive

rights in its copyright. The intentional acts infringing Washington Shoe's copyright likely took place in Arkansas, where A-Z received the infringing boots from a Chinese manufacturer, displayed them for sale, and then—after having been advised that they were knock-offs—sold them to a thrift store. Even if A-Z was not aware of the infringing boots at the outset, A-Z made a bulk sale of the infringing boots after receiving two cease-and-desist letters from Washington Shoe's corporate counsel in Washington. A-Z's intentional acts were expressly aimed at the copyright held by Washington Shoe because A-Z *knew* that its intentional acts would impact Washington Shoe's copyright by virtue of the cease-and-desist letters it had received. Where A-Z knew or should have known that Washington Shoe is a Washington company, A-Z's intentional acts were expressly aimed at the state of Washington.

When the infringer intentionally interferes with the holder's copyright, he strikes at the heart of the rights conferred by the Copyright Act, the holder's right to control his copyright on his own terms. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 946 N.E.2d 159, 165 (N.Y. 2011) ("[T]he injury to a New York copyright holder, while difficult to quantify, is not as remote as a purely indirect financial loss due to the broad spectrum of rights accorded by copyright law."); *see also Penguin Grp. (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 500–01 (2d Cir. 2011) (holding that the copyright holder suffered injury "within the state" even though the infringing acts occurred outside of New York). We think that A-Z's alleged willful infringement of Washington Shoe's copyright, and its knowledge of both the existence of the copyright and the forum of the copyright holder, is sufficient "individualized targeting" to establish the

"something more" necessary to satisfy the express aiming requirement.

### 3. Causing Harm that the Defendant Knows Is Likely to Be Suffered in the Forum State

"The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable." *Mavrix Photo*, 647 F.3d at 1231. It is foreseeable that the loss will be inflicted both in the forum where the infringement took place—Arkansas—and where the copyright holder has its principal place of business—Washington. *Id.*; *see also McGraw-Hill Cos. v. Ingenium Techs. Corp.*, 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005) ("It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York . . . ."). A-Z knew that its intentional acts would have an impact on Washington Shoe and it knew that Washington Shoe had its headquarters in the state of Washington. A-Z knew or should have known that the impact of its willful infringement of Washington Shoe's copyright would cause harm likely to be suffered in the forum. As a consequence, A-Z can "reasonably anticipate being haled into court" in Washington. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

## III.    CONCLUSION

Washington Shoe presented evidence that A-Z engaged in intentional acts that willfully infringed its copyright, knowing that it would adversely impact Washington Shoe in the state of Washington, and knew or should have known both about the existence of the copyright and the forum. Thus, A-Z's

intentional acts were expressly aimed at Washington Shoe in Washington and the harm was felt in Washington. The district court therefore erred in dismissing the action. We express no views on any other issue related to jurisdiction or the merits. In light of our disposition, A-Z's appeal of the denial of attorneys fees is moot.

**REVERSED and REMANDED.**